**Diane OLSON; Lorrie Greene, by her legal guardians, Michael and Jacquolyn Wright; and Jennifer Kay Bechen, individually and on behalf of all other similarly situated, Plaintiffs-Appellees,**

v.

**Nancy A. NORMAN, Commissioner, Iowa Department of Human Services,\* Defendant-Appellant,**

v.

**Otis R. BOWEN, Secretary, United States Department of Health and Human Services, Third Party Defendant-Appellant.**

---

\* Nancy A. Norman has succeeded Michael Reagen as Commissioner of the Iowa Department of Human Services and has been substituted here pursuant to Fed.R.App.P. 43(c)(1).

Diane OLSON; Lorrie Greene, by her legal guardians, Michael and Jacquolyn Wright; and Jennifer Kay Bechen, individually and on behalf of all other similarly situated, Plaintiffs-Appellees,

v.

Nancy A. NORMAN, Commissioner, Iowa Department of Human Services, Defendant-Appellee,

v.

Otis R. BOWEN, Secretary, United States Department of Health and Human Services, Third Party Defendant-Appellant.

Nos. 86–2027, 86–2079 and 87–1176.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided Sept. 15, 1987.

Daniel W. Hart, Asst. Atty. Gen., Des Moines, Iowa, for the State.

Christine Whittaker, Washington, D.C., for the Dept. of Justice.

Martin Ozga, Des Moines, Iowa, for plaintiffs-appellees Olson, et al.

Before McMILLIAN, JOHN R. GIBSON, Circuit Judges, and MURPHY,** District Judge.

DIANA E. MURPHY, District Judge.

The Secretary of the United States Department of Health and Human Services (the Secretary) and the Commissioner of the Iowa Department of Human Services (the Commissioner) appeal from orders of the district court granting summary judgment and a permanent injunction to the plaintiff class.[1]  *Olson v. Reagen,* 631 F.Supp. 154 (S.D.Iowa 1986), *as amended* 669 F.Supp. 282 (1986).  The Commissioner terminated plaintiffs' Medicaid[2] benefits pursuant to Iowa standards, developed to meet federal directives.  The district court found these standards and directives contrary to the Medicaid statute and enjoined the Commissioner and the Secretary from terminating, denying, or reducing Medicaid benefits on the challenged grounds.  The Secretary also appeals from district court orders directing him to pay attorneys' fees to both the plaintiffs and the Commissioner.[3]  Orders of June 11, 1986 and January 22, 1987.  We affirm the judgment on the merits and reverse in part the award of attorneys' fees.  We remand for further proceedings on the issue of fees.

---

** The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, sitting by designation.

1. The two appeals have been consolidated.  The Secretary's appeal was docketed as No. 86–2027, and the Commissioner's was docketed as No. 86–2079.  The Commissioner did not file a brief in support of her appeal and, at oral argument, stated that she had appealed only to ensure a consistent result.

2. Under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396s, commonly known as Medicaid, the federal government and participating states cooperate to provide needy persons assistance with medical expenses.

3. The Commissioner does not appeal from an order directing her to pay attorneys' fees to the plaintiffs.

## I.

In December 1984, before the challenged terminations of benefits, plaintiff Diane Olson lived with her four children in Coon Rapids, Iowa. Olson's son, Jamie Jackson, received Social Security benefits on the account of his late father. Olson and her other three children received AFDC and Medicaid. Plaintiff Lorrie Greene was a sixteen year-old mother who lived with her one year-old daughter, Kira, and her legal guardians, Michael and Jacquolyn Wright, in Shenandoah, Iowa. The Wrights had unspecified resources; Greene and her daughter received AFDC and Medicaid. Plaintiff Jennifer Kay Bechen was an eighteen year-old mother who lived with her son, Jesse Sharkey, and her parents in Dubuque, Iowa. Bechen's parents had unspecified resources; Bechen and her son received AFDC and Medicaid. In late 1984, the commissioner informed the plaintiffs that they and their children were no longer eligible for AFDC or Medicaid because changes in federal law required the inclusion of Jamie Jackson, the Wrights, and Bechen's parents in plaintiffs' respective filing units. Plaintiffs appealed and, after their appeals were dismissed, brought this action.

Plaintiffs Olson and Greene brought this action for declaratory and injunctive relief against the Commissioner; the court subsequently permitted Bechen to intervene as a plaintiff. On April 11, 1985, the district court issued a preliminary injunction, temporarily protecting the plaintiffs' Medicaid eligibility. On May 7, 1985, the Commissioner filed a "third-party cross-complaint" against the Secretary. On March 14, 1986, after two amendments to the complaint, the district court granted class certification and entered judgment in favor of the plaintiff class. On June 11, 1986, after considering various motions, the court amended the class definition and entered final judgment. The court also held that the plain-

tiffs had prevailed against the Commissioner and that both plaintiffs and the Commissioner had prevailed against the Secretary. Finally, on January 22, 1987, the court entered a final order directing the Secretary to pay costs and attorneys' fees to the other parties.

## II.

Title XIX of the Social Security Act establishes a cooperative state-federal program, commonly known as Medicaid, which provides medical assistance to needy persons "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. States that choose to establish Medicaid programs receive federal reimbursement for a portion of the cost of providing federally-authorized services; they must also comply with federal Medicaid guidelines.

Central to the instant dispute is the requirement that participating states provide Medicaid benefits to "categorically needy" individuals.[4] 42 U.S.C. § 1396a(a)(10)(A), 42 C.F.R. § 435.100–.231. The categorically needy include those who receive Aid for Families with Dependent Children (AFDC), under Title IV–A of the Social Security Act, 42 U.S.C. § 601 et seq., and those "who would be eligible for AFDC except for an eligibility requirement used in that program that is specifically prohibited under [Medicaid]." 42 U.S.C. § 1396a(a)(10)(A)(i)(I); 42 C.F.R. § 435.113.

A state participating in Medicaid must develop a state plan consistent with the requirements of 42 U.S.C. § 1396a. This plan must

include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ...

4. States may also choose to provide medicaid to the "medically needy" whose resources and income are too large to permit categorical assist-

ance but who lack the ability to pay medical expenses. 42 C.F.R. § 435.301.

(B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ...

(D) do not take into account the financial responsibility of any individual for any applicant or recipient or assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or ..., is blind or permanently and totally disabled,....

42 U.S.C. § 1396a(a)(17).

"[S]ubsection (17)(B) delegates to the Secretary broad authority to prescribe standards setting eligibility requirements for state medicaid plans." *Herweg v. Ray*, 455 U.S. 265, 274, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982). In particular, the Secretary's definition of what income and resources are "available" to applicants or recipients is "entitled to more than mere deference or weight." *Id.* (citations omitted). The Secretary may, consistent with the statute, "deem" or assume certain resources available regardless of whether they are actually available. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981) (upholding regulations deeming spouse's income available to applicant even when applicant and spouse cease to share the same household). Subsection (17)(D), however, precludes a state from "deeming," as income available to a Medicaid applicant, income from persons other than the applicant's spouse, or parent if the applicant is under twenty-one, blind, or disabled. 42 U.S.C. § 1396a(a)(17)(D); *Herweg*, 455 U.S. at 275 n. 13, 102 S.Ct. at 1067 n. 13, (subsection (17)(D) "prohibits the States from considering the financial responsibility of any individual for the Medicaid applicant *unless* that individual is the applicant's spouse or parent.")

Until 1984, the named plaintiffs in this action were all AFDC recipients categorically entitled to Medicaid benefits under 42 U.S.C. § 1396a(a)(10)(A)(i)(I). They were eligible for AFDC because the program permitted them to exclude from their AFDC "filing units" certain family members whose income and resources would make their families ineligible for AFDC benefits. For example, Olson's family of five would have been ineligible for AFDC if Jamie Jackson's $493.00 in monthly social security benefits was considered family resources; by excluding Jamie and his income from the filing unit, however, Olson and her other three children were able to obtain AFDC.

In 1984, however, Congress limited the ability of families to control the composition of the filing unit. The Deficit Reduction Act of 1984, P. Law No. 98–369, 98 Stat. 1145 (DEFRA), amended numerous federal laws, including both the AFDC statute and the Medicaid statute.[5] DEFRA § 2640(a), now codified at 42 U.S.C. § 602(a)(38) and (39), provides that a state plan for aid to needy families with children must, in determining a child's eligibility for AFDC benefits, include as members of the child's filing unit

(A) any parent of such child, and

(B) any brother or sister of such child, if such brother or sister meets the conditions [for a "dependent child"] described in clauses (1) and (2) of section 606(a) of this title or in section 607(a) of this title (if such section is applicable to the State), if such parent, brother, or sister is living in the same home as the dependent child, and any income available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family....

42 U.S.C. § 602(a)(38). It also provides that the plan must, in determining the eligibility of a child "whose parent or legal guardian is under the age of 18 ... include any income of such minor's own parents or legal guardians who are living in the same home as such minor and dependent child, to

---

**5.** DEFRA is a lengthy piece of legislation; it fills over 700 pages of the statutes at large.

the same extent that income of a stepparent is included under paragraph (31)." 42 U.S.C. § 602(a)(39). Paragraph 31 sets out a complex formula for determining whether "excess income" is available to a child from a stepparent.

The Secretary read 42 U.S.C. § 602(a)(38) and (39) to require the expansion of plaintiffs' filing units and thus to compel the termination of their AFDC benefits. Although at least some of the plaintiffs dispute this interpretation, they do not challenge it in this action.[6] Plaintiffs do, however, challenge the Secretary's determination to terminate their Medicaid benefits because he finds them ineligible for AFDC. Despite 42 U.S.C. § 1396a(a)(17)(b)[7] and the fact the DEFRA did not amend that subsection (although it did amend other portions of the Medicaid statute), the Secretary read DEFRA to permit the termination of plaintiffs' Medicaid benefits.[8]

### III.

#### A. *Standard of Review*

The parties dispute the appropriate standard for judicial review of the challenged actions. The trial court found its "task ... limited to ensuring that the Secretary did not exceed his statutory authority and that the regulation was not arbitrary or capricious." *Olson*, 631 F.Supp. at 158. The Secretary embraces this aspect of the opinion below. Plaintiffs, however, contend that the Secretary's interpretations are not entitled to deference in this situation because they are not formally promulgated regulations; because, unlike

§ 1396a(a)(17)(B), subsection 17(D) does not specifically authorize the Secretary to prescribe standards; and because the statutory language is unambiguous. Other courts that have considered this precise issue have applied somewhat different standards. *Compare Vance v. Hegstrom*, 793 F.2d 1018, 1023 (9th Cir.1986); *Ward v. Wallace*, 652 F.Supp. 301 (M.D.Ala.1987); *Reed v. Blinzinger*, 639 F.Supp. 130 (S.D. Ind.1986), *aff'd*, 816 F.2d 297 (7th Cir.1986) (adopting opinion below); *Malloy v. Eichler*, 628 F.Supp. 582 (D.Del.1986); *Sundberg v. Mansour*, 627 F.Supp. 616 (W.D. Mich.1986); and *Gibson v. Puett*, 630 F.Supp. 542 (M.D.Tenn.1985). All agree, however, that the Secretary's interpretation cannot stand if it is contrary to the clear language of the statute. It is unnecessary here .to resolve the parties' differences on the standard because the decision to terminate plaintiffs' Medicaid benefits cannot withstand even the most limited review.

#### B. *Siblings*

Subsection (17)(D) is quite clear: the determination of Medicaid eligibility may take into account the financial responsibility of the applicant's spouse and of the minor applicant's parents; it may not take into account the financial responsibility of others such as siblings and grandparents. The Secretary may deem the income of a spouse or a minor applicant's parents available to that applicant; he may not deem the income of siblings or grandparents available to the applicant. The Secretary concedes this, but contends that the termination of the Olson family's benefits was

---

**6.** *See Bowen v. Gilliard,* — U.S. ——, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987) (upholding DEFRA § 2640, 42 U.S.C. § 602(a)(38), requirement that sibling income be considered in evaluating AFDC eligibility). It is not clear whether the Secretary's position on the AFDC eligibility of certain plaintiffs has changed during this litigation.

**7.** This section specifically restricts deeming income to Medicaid applicants. *See supra* at pp. 815.

**8.** The Secretary has changed his position on the plaintiffs' Medicaid eligibility in the course of

this litigation. In the district court, he asserted that the termination of plaintiffs' benefits was consistent with federal law. *See* Answer of Third Party Defendant (Record (R.) 83, 84) (admitting that the Commissioner and Iowa Department of Human Services were "acting in a manner consistent with the directives of the [Secretary] in denying medical assistance to the named plaintiffs and putative class members in this action.") He now concedes that Greene's benefits should not have been terminated. He also suggests that Bechen's situation is more complex than originally recognized.

not only permissible under subsection (17)(D), but required by DEFRA.[9] We consider in turn the Secretary's three arguments for terminating Medicaid benefits based on a sibling's resources.[10]

The Secretary's threshold argument is that subsection (17)(D) was never intended to prohibit consideration of sibling income. This argument borders on the frivolous. The Secretary stresses the Congressional intent to relieve the burden some states placed on the adult children of elderly parents. *See, e.g.,* 111 Cong.Rec. 16149 (1965) (Sen. Saltonstall) (amendment adding subsection (17)(D) "removes the financial responsibility of children of the aged for meeting their parents' medical expenses before [medical assistance to the elderly] can become operative.") It is clear, however, that Congress was concerned about the burdens that might be placed on other family members:

> Your committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently and totally disabled children even though 21 years of age or older. Such requirements for support may reasonably include the payment by such relative, if able, for medical care. Beyond such degree of relationship, however, requirements imposed are often destructive and harmful to the relationships among members of the family group. *Thus, States may not include in their plan provisions for requiring contributions from relatives other than a spouse or the parent of a minor child or children over 21 who are blind or permanently and totally disabled.* Any contributions actually made by relatives or friends, or from other sources, will be taken into account by the State in determining whether the individual applying for medical assistance is, in fact, in need of such assistance.

H.Rep. No. 213, 89th Cong., 1st Sess. 68 (1965) (emphasis added). The legislative history is wholly consistent with the clear language of subsection (17)(D). The Secretary cannot now rewrite the statute to deny Medicaid benefits to applicants whose siblings have their own resources.[11]

The Secretary next argues that consideration of sibling income is not "deeming" prohibited by subsection (17)(D). Rather, it is merely the inclusion of income of all members of the filing unit, as required by 42 U.S.C. § 602(a)(38). Deeming, the Secretary argues, occurs only when he counts the income of someone outside the filing unit. The Secretary asserts that he has always included the income of members *voluntarily* included in the AFDC filing unit, and therefore is under no obligation to exclude the resources of those made involuntary members of the AFDC filing unit by § 602(a)(38).

■ The instant dispute has nothing to do with those who voluntarily include otherwise excludable persons in their filing units. The issue here is whether the Secretary can deny Medicaid benefits to children based on the income of siblings who are involuntarily included in the filing unit. We find that he cannot. The Secretary's assertion that § 602(a)(38) does not "deem" resources, "but merely requires that ... siblings be included in the ... filing unit is a distinction without a difference." *Sundberg v. Mansour,* 627 F.Supp. 616, 621 (W.D.Mich.1986). The statute does not distinguish between members of the filing unit and those outside the unit.

The Secretary's related suggestion that sibling income is "actually available" con-

---

**9.** The Secretary does not defend the termination of the Greene family's benefits or those of Bechen's son. The plaintiffs concede that the termination of Bechen's own benefits was consistent with the statute.

**10.** The trial court's injunction prohibits the Secretary and Commissioner from terminating or denying Medicaid benefits "to persons who have lost their eligibility for Aid to Families With Dependent children due to consideration of sib-

ling or nonparental caretaker income." *Olson,* At 283 (1986). It is undisputed in this case that the same analysis applies to both terminations and denials.

**11.** The Secretary concedes that at the time of the amendment, siblings with independent resources could be excluded from determinations of Medicaid eligibility.

flicts with the meaning of that term and of "deeming." Whether resources of one family member are actually available to another is an inherently individual inquiry. If the Secretary assumes that such income is available, without considering the situation of the particular family, he is "deeming." *See Herweg v. Ray,* 455 U.S. at 267, 102 S.Ct. at 1062 ("Deeming in the parlance of the Social Security laws and regulations means ... determin[ing] eligibility by assuming that ... income is 'available' to the applicant."). *See also Malloy v. Eichler,* 628 F.Supp. at 595 n. 8. "Since the sibling and grandparent income at issue here is not actually available to applicants, the [Supreme] Court's precedents compel the conclusion that the income is being 'deemed' to the applicants." *Malloy,* 628 F.Supp. at 595–96. *See also Ward v. Wallace,* 652 F.Supp. 301, 305 (M.D.Ala.1987). Subsection (17)(D) unambiguously prohibits consideration of income and resources of individuals other than spouses and parents. *E.g. Vance v. Hegstrom,* 793 F.2d 1018, 1023 (9th Cir.1986); *Sundberg v. Mansour,* 627 F.Supp. 616, 621 (W.D.Mich.1986). The Secretary's interpretation of subsection (17)(D) is wholly inconsistent with the language of the statute itself.[12]

Finally, the Secretary contends that the legislative history of DEFRA indicates that Congress intended the amendments to 42 U.S.C. § 602(A)(38) to affect Medicaid eligibility. He points to evidence that the administration intended or hoped that its proposals to limit both AFDC and Medicaid eligibility. He also cites reports suggesting that the Congressional Budget Office believed that the AFDC proposals might have an impact on Medicaid expenditures. A Senate Finance Committee report indicates that some expected Medicaid savings to flow from the AFDC changes. The appellees' response to these arguments is simple and persuasive: if Congress had intended to amend subsection (17)(D), it

would have amended the AFDC filing unit provisions; it did not amend subsection (17)(D). "We must assume that Congress was aware of subsection (17)(D) when it enacted the AFDC amendments, could have amended subsection (17)(D), and chose not to do so." *Vance v. Hegstrom,* 793 F.2d 1018, 1025 (9th Cir.1986) (citing *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

We join the other courts that have unanimously rejected the Secretary's efforts to rewrite or ignore the clear language of the statute and regulations. *See Vance v. Hegstrom,* 793 F.2d 1018, 1023 (9th Cir. 1986); *Ward v. Wallace,* 652 F.Supp. 301 (M.D.Ala.1987); *Reed v. Blinzinger,* 639 F.Supp. 130 (S.D.Ind.1986), *aff'd,* 816 F.2d 296 (7th Cir.1986) (adopting opinion below); *Malloy v. Eichler,* 628 F.Supp. 582 (D.Del. 1986); *Sundberg v. Mansour,* 627 F.Supp. 616 (W.D.Mich.1986); *Childress v. Heckler,* No. 85–Z–1459 (D.Colo. Jan. 13, 1986); *Gibson v. Puett,* 630 F.Supp. 542 (M.D.Tenn. 1985). *Cf. Massachusetts Association of Older Americans v. Sharp,* 700 F.2d 749 (1st Cir.1983) (categorical Medicaid benefits could not be terminated where AFDC ineligibility resulted from deeming of stepparent's income).

It is uncontested that, in enacting DEFRA, Congress sought to reduce spending, but it is not clear that it intended to do so by excluding plaintiffs and similarly situated persons from Medicaid eligibility. Although DEFRA amended some sections of the Medicaid statute, DEFRA § 2640 refers only to AFDC. The legislative history indicates that members of the administration and perhaps some Congressional staff members generally anticipated that changes in AFDC would provide Medicaid savings. However, these statements are insufficient to support the Secretary's case. The cited statements speak very generally about Medicaid savings; they do not specif-

---

**12.** The Secretary's position is also inconsistent with his own binding regulations, *see* 42 C.F.R. § 435.113 and 435.602, and with the Secretary's own previously stated position. *See Malloy v. Eichler,* 628 F.Supp. at 596 (discussing Secretary's 1984 analysis of regulations). We disagree with the Secretary's suggestion that DE-

FRA § 2640 requires either reinterpretation or revision of these regulations. *Accord, Reed v. Blinzinger,* 639 F.Supp. 130 (S.D.Ind.1986) *aff'd* 816 F.2d 296 (7th Cir.1987) (adopting opinion below); *Malloy v. Eichler,* 628 F.Supp. 582, 596–97 (D.Del.1986).

ically suggest that the challenged sorts of terminations will cause the savings. The desire of others to change Medicaid eligibility standards is irrelevant in the absence of evidence that Congress intended to change those standards. The legislative record is devoid of any clear evidence that Congress intended that DEFRA § 2640 modify or amend subsection (17)(D). *E.g. Vance v. Hegstrom,* 793 F.2d at 1025.

### C. *Grandparents*

Under subsection (17)(D), the Secretary may deem the income of a minor applicant's parents available to that Medicaid applicant, even if the minor has children of his or her own. It is not clear from the record whether plaintiffs ever disputed this, but they now concede that plaintiff Bechen, and others like her, were permissibly removed from the Medicaid rolls:[13] It is equally clear that the Secretary may not deem the income of a minor applicant's parents available to the minor's child. The Secretary initially contended that he could deem the grandparents' income to the grandchild,[14] but he now concedes that this is impermissible under 42 U.S.C. § 1396a(a)(17)(D).[15] Brief of Third-Party Defendant-Appellant at 30–31; Reply Brief of Third-Party Defendant-Appellant at 1–2. The parties thus agree about the cases of plaintiff Bechen and her son: Bechen's Medicaid benefits were properly terminat-ed; Jesse Sharkey's benefits were improperly terminated because neither he nor his mother had any independent income or resources.[16]

The parties' remaining dispute has thus narrowed to a question about precisely how the Secretary may assess the needs and resources of Medicaid applicants whose parents are minors. Disposition of this issue requires some understanding of the technical procedure for determining AFDC and Medicaid eligibility.[17]

To determine whether applicants are eligible for AFDC, the state agency compares their incomes and resources, less certain reserves, allowances, and disregards, with a state "need standard." 45 C.F.R. 233.-20(a)(3)(ii). The need standard is based on the number of persons in a family filing unit, and assumes economies of scale. Thus, in Iowa, a single person filing unit has a need standard of $213 per month, while a two person filing unit has a need standard of $421 per month, or $210.50 per person. A three person filing unit has a need standard of $497, or only $165.67 per person. The per capita need standard continues to decrease as the filing unit size increases.

A state need not provide this full need standard, but may make a "ratable reduction" consistent with 45 C.F.R. § 233.20(a)(2)(ii). Thus, in Iowa, a single

13. "[W]hen Ms. Bechen was cancelled from AFDC benefits her own Medicaid benefits were also properly cancelled because both the AFDC and Medicaid programs allow for consideration of parental income to a child under the age of 21." Brief of Plaintiffs-Appellees at 32.

14. The Secretary's position has not always been clear. The Commissioner understood the Secretary's instructions to require "a minor mother and her children to be treated as on eligibility unit for both A[F]DC and Medicaid purposes. If the minor mother lives with her parents, the income of the parents must be considered as available to the assistance unit composed of the minor mother and her children." Commissioner's Response to Plaintiff's Motion for Summary Judgment at 4 (R. 354). The Commissioner therefore terminated Jesse Sharkey and others in the same situation from the Medicaid program. In his answer, the Secretary admitted that the Commissioner acted consistently with his requirements. *Answer* (R. 83, 84). His cur-rent position to the contrary was first clearly stated in his reply brief on appeal.

15. Although the Secretary has conceded that the deeming of a grandparent's income violates subsection (17)(D), he continues to argue that the deeming of a sibling's income is not contrary to that provision. His basis for the distinction is not clear.

16. The Secretary does not expressly concede Jesse Sharkey's case, but this conclusion follows from the Secretary's more generally described position.

17. Judge Friendly observed that the Byzantine construction of the Social Security Act makes it "almost unintelligible to the uninitiated," *Friedman v. Berger,* 547 F.2d 724, 727 n. 7 (2d Cir. 1976) *cert. denied* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), *quoted in Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2639, 69 L.Ed.2d 460 (1981).

person filing unit may receive up to $163, a two person filing unit up to $322, or $161 per person, and a three member filing unit up to $381, or $127 per person. Thus the actual payments, as well as the need standards, decrease per capita as the filing unit grows larger.[18] Applicants receive these maximum payments only if they have essentially no resources. If they have other resources, their payments are reduced accordingly.

The Secretary contends that minor parents and their children should be considered a single filing unit. Thus, a hypothetical teenaged mother and her two children would qualify for no more than $381 in AFDC payments. To the extent that the minor mother's own parents have sufficient resources to support her, this sum could be reduced by up to $163, or the maximum AFDC payment for a single-person filing unit. Thus the children would be independently entitled to no more than $218. If the minor mother had additional resources of her own, this $218 could be reduced accordingly. Thus, if she earned $250 per month, her children would not be eligible for AFDC or for Medicaid under the Secretary's approach.

■ The plaintiffs contend that the Secretary's scheme violates subsection (17)(D) by taking into account the financial responsibility of the applicants' grandparents. They assert that, at least for Medicaid purposes, the Secretary must characterize the minor's children as a separate filing unit. Thus the two child filing unit in our hypothetical is entitled to $322 per month in AFDC benefits; their mother's own income of $250 reduces this, but still leaves them eligible for Medicaid.

The court must agree with the plaintiffs. The children's eligibility turns on whether their grandparents' resources are taken into account as income available to their family unit. The Secretary's description of his procedure clearly "take[s] into account the financial responsibility" of the children's grandparents, albeit indirectly. This "double-deeming" violates subsection (17)(D). Cf. *Malloy v. Eichler*, 628 F.Supp. 582 (D.Del.1986); *Gibson v. Puett*, 630 F.Supp. 542 (M.D.Tenn.1985); see also *Olson*, 631 F.Supp. at 159 (rejecting Secretary's "trickle down" theory).

## IV.

The district court awarded plaintiffs costs and attorneys' fees against both the Commissioner and the Secretary, and awarded the Commissioner costs and attorneys' fees against the Secretary. The Commissioner does not appeal from the order of attorneys' fees against her, but the Secretary appeals from the awards against him.[19]

The court awarded fees to the plaintiffs pursuant to two alternate subsections of 28 U.S.C. § 2412. That statute provides for attorneys' fees to parties that have prevailed against the United States in civil actions.[20] The Secretary concedes that the plaintiffs "prevailed",[21] but contends that they cannot recover under either § 2412(b) or § 2412(d).

Section 2412(b) authorizes awards of attorneys fees against the United States "to the same extent that any other party would be liable under the common law or the terms of any statute which specifically provides for such an award." The statute on

18. It appears that the Iowa payments standards have increased since late 1984, when the Commissioner attempted to terminate plaintiffs' benefits. For example, it appears that the single member filing unit payment has increased from $154 to $163, and the four member filing unit payment has been increased from $419 to $443.

19. The trial court awarded costs pursuant to 28 U.S.C. § 2412(a). The Secretary does not appeal this award.

20. Plaintiffs are essentially nominal parties in the fees appeal. Since they are entitled to re-

cover against the Commissioner, and the award against the Secretary makes no real difference to them. The Commissioner, of course, would prefer to share liability for plaintiffs' attorneys' fees with the Secretary. Thus it is the Commissioner who has most vigorously defended both awards against the Secretary.

21. Although the Commissioner styled her pleading as a "Third-Party Cross-Complaint," the parties agree that the Secretary has been treated as a defendant in this litigation.

which plaintiffs rely for such a specific provision is 42 U.S.C. § 1988, which authorizes fees in civil rights actions. The trial court concluded "inasmuch as [the Secretary's] successfully challenged policy required state participation to be effected, defendant Bowen conspired with state officials so as to satisfy the state action requirement of 42 U.S.C. § 1983." *Olson v. Reagan*, slip op. at 1 (January 22, 1987).

■ Federal officials who violate federal rights protected by § 1983 generally do not act "under color of state law," and therefore cannot be held liable for attorneys' fees under 28 U.S.C. § 2412(b) and 42 U.S. C. § 1988. *Premachandra v. Mitts*, 753 F.2d 635 (8th Cir.1985) (en banc). Where federal officials conspire with state officials, however, they may be held liable for fees under those statutes. *E.g. Knights of the Ku Klux Klan v. East Baton Rouge School Board*, 735 F.2d 895, 899–900 (5th Cir.1984). Such conspiracies "are not commonplace but nor are they unheard of." *Premachandra*, 735 F.2d at 641 n. 7 (citations omitted).

■ The record here does not support a finding that there was a conspiracy to violate plaintiffs' rights. The intergovernmental nature of a joint state-federal program does not by itself make out a conspiracy. There are no findings of special pressures brought to bear by federal actors here, *cf. Savage v. Toan*, 636 F.Supp. 156 (W.D.Mo.1986), and there appears to be no evidence of any conspiracy. The state officials merely attempted to follow the directions of the Secretary and his subordinates in administering the state program tied into the federal Medicaid plan. In the absence of a conspiracy, plaintiffs have not identified a basis for an award under § 2412(b).

Under 28 U.S.C. § 2412(d), "a court shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* at § 2412(d)(1)(A). The party seeking such an award,

shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement.... The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

*Id.* at § 2412(d)(1)(B)

■ The requirement that plaintiff submit an application within thirty days of final judgment is "a mandatory, jurisdictional condition." *Monark Boat Co. v. NLRB*, 708 F.2d 1322, 1327 (8th Cir.1983). *See also Action on Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211 (D.C.Cir.1984). Failure to submit the application within 30 days bars an award under § 2412(d). *E.g. Premachandra v. Mitts*, 753 F.2d 635, 642 n. 10 (8th Cir.1985). An application for fees that does not specifically allege that the position of the United States was not substantially justified does not fulfill the requirements of § 2412(d). *Keasler v. United States*, 766 F.2d 1227, 1229 n. 4 (8th Cir.1985). This is not an empty formality. The federal party must have an opportunity to be heard on the justification for its position. *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349 (9th Cir.1985). This opportunity is particularly significant because "the government bears the burden of showing that its 'position' is substantially justified." *Keasler*, 766 F.2d at 1231.

■ The trial court found the plaintiffs entitled to attorneys' fees without waiting for a formal fees application and without specifying which of the other parties would be obligated to pay the fees. The court directed plaintiffs to file a statement of

fees, and the plaintiffs promptly complied. The trial court found that the Secretary's position was not substantially justified, but it is not clear from the record that the Secretary had an opportunity to address the propriety of an award or the specific issue of substantial justification. In such a situation, the order of fees against the Secretary must be reversed, and the prevailing party permitted to correct its omission and file a proper application for fees. *Brock*, 762 F.2d at 1358–60. On remand, the district court should determine whether the government has shown substantial justification.

The trial court also found the Secretary liable under 28 U.S.C. § 2412(b) and common law principles of indemnity for attorneys' fees incurred by the Commissioner in the course of defending the original action. The Secretary contends that this award impermissibly stretches the limited waiver of immunity made by § 2412(b). Plaintiffs respond that the award is within the meaning of the statute, which authorizes awards against the government "to the same extent that any other party would be liable under the common law...."

█ Waivers of sovereign immunity must be strictly construed. *E.g., United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). "The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Sherwood*, 312 U.S. at 586, 61 S.Ct. 767, 85 L.Ed. 1058 (citations omitted).

The parties agree that the scope of the § 2412(b) common law provision is not facially evident and each relies on the legislative history to support a narrow or an expansive reading. *See generally,* H.R. Rep. No. 96–1418, 96th Cong.2d Sess. *reprinted in* 1980 U.S.Cong. & Admin.News pp. 4953, 4984–5003. We need consider only one of their points of difference. The Commissioner asserts that the legislative

history indicates that Congress intended the United States to be held to answer to all fee-shifting laws, whether federal or state. The Secretary reads the statute to refer only to federal law. The legislative history supports the latter view.

"Under present law in the United States, each party is responsible for the payment of his own attorney fees and other expenses incurred during litigation. The 'American rule,' however, has both common law and statutory exceptions." H.R. Rep. No. 96–1418, at 8, U.S.Code Cong. & Admin.News 1980, at 4986. The Committee went on to identify the "two well-recognized [common law] exceptions to the American rule," and to note that "Congress has authorized the recovery fees in a variety of contexts, usually to effectuate a specific and compelling public interest." H.R. Rep. No. 96–1418, at 8, U.S.Code Cong. & Admin.News 1980, at 4986. The laws cited as exceptions are all federal: both common law and statutes. *Id.* Indeed, the committee specifically noted that the federal government would "be liable under the same standards which govern awards against other parties under *Federal* statutory exceptions." H.R.Rep. No. 96–1418, at 17, U.S.Code Cong. & Admin.News 1980, at 4996 (emphasis added).

We do not read § 2412(b) to subject the United States to liability for attorneys' fees based on state laws, be they statutory or common. *Accord Joe v. United States*, 772 F.2d 1535 (11th Cir.1985) (§ 2412(b) refers to federal statutes, not all statutes); *Mark v. Kanawha Banking & Trust Co.*, 575 F.Supp. 844 (D.Ore.1983) (same). The parties agree that the federal courts have not recognized a federal common law of indemnity.[22] Under these circumstances, we need not address the Secretary's other assertions of error.

## V.

The judgment on the merits in No. 86–2027/2079 is affirmed. The award of attorneys' fees in No. 87–1176 is reversed and

---

**22.** The Secretary notes that the Commissioner may be entitled to some reimbursement for his defense of this action under 42 U.S.C. § 1396b and 42 C.F.R. § 447.1 *et seq.*

the fees issue is remanded to the district court for further proceedings consistent with this opinion.