123 F.3d 863
 Antonia STRICKLAND, on her own behalf and on behalf of
Joneisa Strickland and Brian Strickland, both minors, and on
behalf of all others similarly situated; Julie Jeffers, on
her own behalf and on behalf of Clarence Jeffers, III, a
minor, and on behalf of all others similarly situated,
Plaintiffs-Appellees,
v.
Donna SHALALA, Secretary of Health and Human Services,
Defendant-Appellant.
 No. 96-3569.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 9, 1997.
Decided July 9, 1997.*
 
 Gary M. Smith (argued and briefed), Southeastern Ohio Legal Services, New Philadelphia, OH, for Plaintiffs-Appellees.
 William Kanter (briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Edward Himmelfarb (argued and briefed), Washington, DC, for Defendant-Appellant.
 Before MARTIN, Chief Judge, NORRIS and DAUGHTREY, Circuit Judges.
 BOYCE F. MARTIN, Jr., Chief Judge.
 
 
 1
 This appeal is from the district court's award of attorney fees against the Secretary of Health and Human Services under the Equal Access to Justice Act, 28 U.S.C. § 2412(b), and 42 U.S.C. § 1988. The Secretary, asserting that the fee provisions relied on by the plaintiffs and the district court are inapplicable to this case, filed a timely notice of appeal, and we now REVERSE.
 
 Background
 
 2
 The AFDC program, established in 1935 by title IV-A of the Social Security Act, provides financial assistance and services to needy, dependant children and the parents or relatives with whom they are living. The program "is based on a scheme of cooperative federalism." King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). A state may choose not to participate, but once it elects to join the program, it must administer its AFDC program "pursuant to a state plan that conforms to applicable federal statutes and regulations." Heckler v. Turner, 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138 (1985). A participating state with an approved state plan is entitled to federal reimbursement of certain program costs, 42 U.S.C. § 603, but federal payments may be cut off if the state fails to comply with the terms of the plan, § 604(a). Within the bounds of these federal requirements, the state directly administers the AFDC program through its designated state agency.
 
 
 3
 In 1981, Congress added a provision requiring a state's AFDC agency to correct any overpayment or underpayment of financial assistance. Specifically, 42 U.S.C. § 602(a)(22) requires, in pertinent part, that a state plan:
 
 
 4
 provide that the State agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan, and, in the case of--
 
 
 5
 (A) an overpayment to an individual who is a current recipient of such aid (including a current recipient whose overpayment occurred during a prior period of eligibility), recovery will be made by repayment by the individual or by reducing the amount of any future aid payable to the family of which he is a member....
 
 
 6
 (B) an overpayment to any individual who is no longer receiving aid under the plan, recovery shall be made by appropriate action under State law against the income or resources of the individual or the family....
 
 
 7
 The federal regulations at 45 C.F.R. § 233.20(a)(13)(i), further explain a state's obligation to collect overpayments:
 
 
 8
 (A) The State must take all reasonable steps necessary to promptly correct any overpayment....
 
 
 9
 (1) Any recovery of an overpayment to a current assistance unit, including a current assistance unit or recipient whose overpayment occurred during a prior period of eligibility, must be recovered through repayment (in part or in full) by the individual responsible for the overpayment or recovering the overpayment by reducing the amount of any aid payable to the assistance unit of which he or she is a member, or both.
 
 
 10
 (B) The State shall recover an overpayment from (1) the assistance unit which was overpaid, or (2) any assistance unit of which a member of the overpaid assistance unit has subsequently become a member, or (3) any individual members of the overpaid assistance unit whether or not currently a recipient. If the state recovers from individuals who are no longer recipients, or from recipients who refuse to repay the overpayment from their income and resources, recovery shall be made by appropriate action under state law against the income or resources of those individuals.
 
 
 11
 (C) If through recovery, the amount payable to the assistance unit is reduced to zero, members of the assistance unit are still considered recipients of AFDC.
 
 
 12
 The genesis of this appeal was a class-action suit filed by certain recipients of AFDC assistance against the Secretary of Health and Human Services in her official capacity. The lawsuit challenged the federal regulations relating to the state's obligations to recover overpayments. Specifically, the complaint alleged that when an adult who received an overpayment was no longer in the assistance unit, the Ohio Department of Human Services (ODHS), the state agency charged with implementing the state plan, was required by the federal regulations to seek recovery of that overpayment from the children remaining in the assistance unit and not from the adult. The plaintiffs, asserting that this practice violated 42 U.S.C. § 602(a)(22), the Administrative Procedure Act (APA), and the United States Constitution, sought declaratory and injunctive relief.
 
 
 13
 The Secretary moved to dismiss for lack of standing and for failure to state a claim for relief. While the motion was pending, the Secretary issued two memoranda that reiterated the state's obligation to recover overpayments, but also directed the state to seek recoupment first from the adult caretaker who had received the overpayment. In response to the memoranda, ODHS adopted a new approach to overpayment recovery that required county departments of human services to pursue only the adults who received the overpayments as long as they were "locatable," i.e., not dead, bankrupt, or living in a foreign country. In response to the change, the plaintiffs voluntarily dismissed their action with prejudice and without obtaining any concession from the Secretary regarding standing or the merits.
 
 
 14
 The plaintiffs subsequently filed a motion for attorney fees under 42 U.S.C. § 1988 and subsections (b) and (d) of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, but later dropped their claim for fees under § 2412(d). The district court, finding that the plaintiffs were a prevailing party and that the Secretary had acted under color of state law, awarded $22,037.67 in attorney fees pursuant to 42 U.S.C. § 1988. After the Secretary's motion to reconsider was denied by the district court, the Secretary filed a timely notice of appeal with this Court.
 
 Analysis
 
 15
 The district court found that the appellees were entitled to an award of attorney fees from the Secretary pursuant to 42 U.S.C. § 1988, which provides for fee awards to plaintiffs who are prevailing parties in suits brought under various civil rights statutes, including § 1983. Section 1988 is made applicable to federal officials through the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b). See Geier v. Richardson, 871 F.2d 1310, 1312 & n. 1 (6th Cir.1989) (finding that subsection (b) of the EAJA and § 1988 "operate together to permit the district court in its discretion to award reasonable attorney's fees against the United States to a prevailing party" in a civil rights action).
 
 
 16
 This Court reviews an award of attorney fees under the EAJA to determine whether the district court abused its discretion. Perket v. Secretary of Health and Human Servs., 905 F.2d 129, 132 (6th Cir.1990). "Under this standard, the district court's factual findings are reviewed for clear error, while its legal conclusions are examined de novo." Id.
 
 
 17
 In awarding attorney fees against the Secretary under the EAJA, the district court found that fees were recoverable under § 1988 because the plaintiffs had established a cause of action against the Secretary under § 1983. To establish a claim under § 1983, a plaintiff must show that he was deprived of rights guaranteed under the United States Constitution or federal law by a person acting "under color of state law." 42 U.S.C. § 1983. Because federal officials typically act under color of federal law, they are rarely subject to liability under § 1983. Nevertheless, we have joined a majority of circuits in recognizing that a federal official can act "under color of state law" in certain circumstances. Rowe v. Tennessee, 609 F.2d 259, 263-64 (6th Cir.1979) (holding that decision of certain federal employees or "agents" of the federal government to discharge plaintiff was within their statutory administrative authority at the state level and, thus, was done under color of state law); see also Cabrera v. Martin, 973 F.2d 735, 741 (9th Cir.1992); Olson v. Norman, 830 F.2d 811, 821 (8th Cir.1987); Jorden v. National Guard Bureau, 799 F.2d 99, 111 n. 17 (3d Cir.1986), cert. denied, 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987); Reuber v. United States, 750 F.2d 1039, 1061 (D.C.Cir.1984); Knights of the Ku Klux Klan v. East Baton Rouge Parish Sch. Bd., 735 F.2d 895, 899-900 (5th Cir.1984); Kletschka v. Driver, 411 F.2d 436, 448-449 (2d Cir.1969). We have further instructed that the "evaluation of whether particular conduct constitutes action taken under the color of state law[ ] must focus on the actual nature and character of that action." Schultz v. Wellman, 717 F.2d 301, 304 (6th Cir.1983). Because the "actual nature and character" of the Secretary's actions in this case were federal, rather than state, we find that she did not act under color of state law.
 
 
 18
 In this case, the plaintiffs challenged the Secretary's actions in promulgating and enforcing regulations that require the State to recoup overpayments from the class. The district court held that the Secretary acted "under color of state law" because she had compelled the state "to exercise authority to seek recoupment of benefits against members of the class. In effect, federal officials used state authority to enforce the relevant statute and regulations." The Secretary filed a motion for reconsideration, again arguing that the Secretary had not acted under color of state law. The district court, giving the following explanation, denied the motion:
 
 
 19
 In the case at bar, [the Secretary] utilized ODHS, a state agency, to seek recoupment of AFDC overpayments. Although [the Secretary] and ODHS were not in harmony on the issue that served as a basis for plaintiffs' claims, ODHS nevertheless was required to implement [the Secretary's] directive. Unlike Rosas, ... ODHS faced the loss of federal funds if it refused to comply with defendant's regulation. Unlike Askew, ODHS was not acting in a volunteer capacity merely to assist the federal government. In seeking recoupment, ODHS was exercising its own authority to implement a federal directive. The fact that [the Secretary] effectively exercised state authority to implement the regulation constitutes sufficient state action to come within the parameters of § 1983.
 
 
 20
 Thus, the district court essentially found that the state agency's participation in and implementation of the cooperative federalism scheme were sufficient to provide the requisite state action for the Secretary, a federal official. We disagree.
 
 
 21
 The Supreme Court has acknowledged that a state agency's violation of federal or constitutional law in administering an AFDC benefits program can give rise to § 1983 liability. See Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Nevertheless, the actions of the Secretary, rather than the state, are the focus of our inquiry, and courts finding that a federal official has acted under color of state law have done so only when there is evidence that federal and state officials engaged in a conspiracy or "symbiotic" venture to violate a person's rights under the Constitution or federal law. Cabrera, 973 F.2d at 742-43 ("To transform a federal official into a state actor, the appellees must show that there is a ' "symbiotic relationship" between the [federal defendants] and the state such that the challenged action can "fairly be attributed to the state." ' " (citations omitted)); Kali v. Bowen, 854 F.2d 329, 331 (9th Cir.1988) ("[T]he plaintiffs make no allegation that federal and state officials conspired so that the actions taken by the federal officials could be deemed to have been 'under color of state law'...."); Knights of the Ku Klux Klan, 735 F.2d at 900 ("Ordinarily, when federal officials conspire or act jointly with state officials to deny constitutional rights, 'the state officials provide the requisite state action to make the entire conspiracy actionable under section 1983.' "); Askew v. Bloemker, 548 F.2d 673, 678 (7th Cir.1976) ("[I]f plaintiffs are to rely on the concert-of-action theory enunciated in Kletschka v. Driver, [411 F.2d 436 (2d Cir.1969) ], the [plaintiffs] must have at east have alleged a conspiracy between the named defendants and these state officials as a basis for their § 1983 claim.").
 
 
 22
 In this case, however, the district court essentially found that the Secretary's mere exercise of her duties under a cooperative federalism scheme qualifies her as a person acting "under color of state law." No other court has extended the "under color of state law" element of § 1983 to the implementation of a cooperative federalism program by federal officials, and those courts of appeals that have faced the issue have declined to adopt such a construction. Kali, 854 F.2d at 331 (finding, in litigation challenging federal officials' promulgation and enforcement of AFDC regulations, that federal officials could not be found to have acted "under color of state law" absent allegation of conspiracy with state officials); Olson v. Norman, 830 F.2d 811, 821 (8th Cir.1987) ("Where federal officials conspire with state officials ... they may be held liable for fees under those statutes.... The intergovernmental nature of a joint state-federal program does not by itself make out a conspiracy.").
 
 
 23
 The Eighth Circuit, in Olson v. Norman, 830 F.2d 811 (8th Cir.1987), addressed a similar claim for attorney fees under § 2412(b) and § 1988. In Olson, the Commissioner of the Iowa Department of Health and Human Services had terminated the plaintiffs' AFDC and medicaid benefits pursuant to Iowa standards developed to meet federal directives. The district court found for the plaintiffs on the merits, and the plaintiffs sought attorney fees under § 2412(b). In reversing the district court's award of fees against the Secretary, the Eighth Circuit held the following:
 
 
 24
 Federal officials who violate federal rights protected by § 1983 generally do not act "under color of state law," and therefore cannot be held liable for attorneys' fees under 28 U.S.C. § 2412(b) and 42 U.S.C. § 1988. Where federal officials conspire with state officials, however, they may be held liable for fees under those statutes. Such conspiracies "are not commonplace but nor are they unheard of."
 
 
 25
 The record here does not support a finding that there was a conspiracy to violate plaintiffs' rights. The intergovernmental nature of a joint state-federal program does not by itself make out a conspiracy. There are no findings of special pressures brought to bear by federal actors here, and there appears to be no evidence of any conspiracy. The state officials merely attempted to follow the directions of the Secretary and his subordinates in administering the state program tied into the federal Medicaid plan. In the absence of a conspiracy, plaintiffs have not identified a basis for an award under § 2412(b).
 
 
 26
 Id. at 821 (citations omitted). We agree with the Eighth Circuit's conclusion. Contrary to the district court's finding, the Secretary did not "effectively exercise[ ] state authority to implement the regulation." Instead, she exercised federal authority granted to her by federal statute. The "actual nature and character" of the Secretary's promulgation and enforcement of the federal regulations were federal, rather than state. Schultz, 717 F.2d at 304. To find that a state's efforts to comply with a federal regulation transform a federal official--who merely promulgated and enforced a federal regulation--into a state actor seemingly would render the United States subject to § 1983 liability in every case arising out of a cooperative federalism scheme.
 
 
 27
 Nevertheless, the plaintiffs maintain that a conspiracy sufficient to render the Secretary an actor "under color of state law" did exist between federal and state officials. Other than the existence of the statutory scheme and the state's compliance efforts, however, there is no indication in the record that the Secretary and state officials conspired to deprive the plaintiffs of their rights under federal law or the Constitution. To the contrary, the State has consistently challenged the Secretary's interpretation of the statute and, in fact, that challenge is the subject of another decision recently issued by this Court. See Ohio Dep't of Human Services v. United States Dep't of Health and Human Services Admin. for Children and Families, No. 96-3606, 1997 WL 415319 (6th Cir. July 22, 1997) (unpublished disposition). The plaintiffs concede that the State followed the federal regulations only because it was required to do so under federal law. Therefore, the Secretary and state officials were actually antagonists, rather than co-conspirators engaged in a "symbiotic venture" to deprive the appellees of their rights under the Constitution or federal law. Without proof of such a conspiracy, the federal officials cannot be found to have acted "under color of state law." See, e.g., Cabrera, 973 F.2d at 743 ("The evidence demonstrates, in other words, that the Governor and the federal defendants were involved in an antagonistic relationship, not a 'symbiotic' venture. The Governor induced the federal defendants to terminate Cal-OSHA; they did not 'act in concert' with him.").
 
 
 28
 Accordingly, because the Secretary was not acting under "color of state law" when she promulgated and enforced federal regulations forcing the state to collect overpayments from the plaintiffs, we REVERSE the district court's award of attorney fees under 28 U.S.C. § 2412(b).
 
 
 
 *
 This decision was originally issued as an "unpublished decision" filed on July 9, 1997. On August 7, 1997, the court designated the opinion as one recommended for full-text publication