

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-19-1998

# Hindes v. FDIC

Precedential or Non-Precedential:

Docket 97-1354

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation
"Hindes v. FDIC" (1998). *1998 Decisions.* Paper 32.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/32

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 19, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1354

Gary E. Hindes, Samuel Rappaport, Raymond Perelman,
Gary Erlbaum, Daniel Neduscin, individually and
derivatively for Meritor Savings Bank, f/k/a The
Philadelphia Savings Fund Society,

      Appellants

v.

The Federal Deposit Insurance Corporation, in its
corporate capacity and as receiver for Meritor Savings
Bank, f/k/a The Philadelphia Savings Fund Society;
John/Jane Does 1-10, Directors, Officers, Agents, and
Employees of the Federal Deposit Insurance Corporation;
and Richard C. Rishel, in his official capacity as the
Secretary of Banking of the Commonwealth of
Pennsylvania.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 94-02355)

Argued December 12, 1997

BEFORE: GREENBERG, ROTH, and SEITZ, Circuit Judges

(Filed: February 19, 1998)

Ken Carroll (Argued)
Kortney Kloppe-Orton
Carrington, Coleman, Sloman &
 Blumenthal, L.L.P.
200 Crescent Court, Suite 1500
Dallas, TX 75201

Richard L. Bazelon
A. Richard Feldman
Bazelon & Less
1515 Market Street
7th Floor
Philadelphia, PA 19102

 Attorneys for Appellants

Ann S. DuRoss
Assistant General Counsel
Maria Beatrice Valdez
Acting Senior Counsel
Thomas C. Bahlo (Argued)
Counsel
Federal Deposit Insurance
 Corporation
550 17th Street, N.W.
Room H-11126
Washington, D.C. 20429

 Attorneys for Appellee
 Federal Deposit Insurance
 Corporation in its Corporate
 Capacity

2

David Smith
Rolin P. Bissell
Theresa E. Loscalzo
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA 19103

John J. Graubard (Argued)
Colleen J. Boles
Charlotte M. Kaplow
David A. Birch
Federal Deposit Insurance
 Corporation Legal Division
101 East River Drive
P.O. Box 280402
East Hartford, CT 06128-0402

 Attorneys for Appellee
 Federal Deposit Insurance
 Corporation as Receiver for Meritor
 Savings Bank

D. Michael Fisher
Daniel J. Doyle (argued)
Calvin R. Koons
John G. Knorr, III
Office of Attorney General
Litigation Section
15th Fl., Strawberry Square
Harrisburg, PA 17120

 Attorneys for Appellee
 Secretary of Banking of the
 Commonwealth of Pennsylvania

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

Gary E. Hindes, and other shareholders of Meritor
Savings Bank ("Meritor"), appeal from various district court

3

orders dismissing their claims against the Federal Deposit Insurance Corporation ("FDIC") and the Pennsylvania Secretary of Banking ("Secretary"). Appellants contend that the appellees wrongfully seized Meritor, thereby depriving them of their substantive due process rights. More particularly, appellants allege that the FDIC reneged on an agreement with Meritor with respect to the computation of its capital base, ignored Meritor's actual financial condition when seizing Meritor, and engaged in a conspiracy with state officials to close the bank. Appellants also assert that the FDIC violated certain of its statutory duties as receiver.

The district court had jurisdiction pursuant to 28 U.S.C. SS 1331 and 1367 and 12 U.S.C. SS 1819(b)(2)(A) and 1821(d)(6)(A). We have jurisdiction to review thefinal orders of the district court pursuant to 28 U.S.C. S 1291. We exercise plenary review over the issues on this appeal, as they all require review of the district court's interpretation and application of legal precepts. See Turner v. Schering–Plough, Corp., 901 F.2d 335, 340 (3d Cir. 1990).

II. FACTS AND PROCEDURAL HISTORY

The Secretary1 closed Meritor, the largest savings bank in Pennsylvania, on December 11, 1992, and appointed the FDIC as its receiver. The majority of appellants' allegations concern the events leading up to that closing, as they primarily object to the propriety of the seizure of Meritor. Because the district court disposed of all of appellants' claims on either motions to dismiss or for summary judgment, we accept as true their allegations, and therefore base our recitation of the facts on the allegations in the complaint.

In 1982, at the FDIC's request, Meritor assumed the deposit liabilities of Western Savings Fund Society of Philadelphia ("Western"). To induce Meritor to assume these liabilities, the FDIC granted Meritor the right to amortize,

_____

1. The Secretary of Banking at the time of the events we describe was Sarah W. Hargrove. Since that time, Richard C. Rishel has replaced her. Thus, in this memo we refer to the Secretary as "he." See Fed. R. App. P. 43(c).

4

over a 15-year period, $796 million of "goodwill" resulting from the Western transaction ("grand-fathered goodwill"), thereby increasing Meritor's regulatory capital base. This transaction saved the FDIC and its Bank Insurance Fund $400 million. The FDIC and Meritor evidenced this regulatory goodwill inducement in a written agreement dated April 3, 1982. For over ten years, the FDIC and Meritor abided by that agreement.

In an agreement dated April 5, 1991, the FDIC reaffirmed the 1982 agreement and further agreed to renegotiate Meritor's capital requirements if at any time Congress prohibited Meritor from considering this goodwill as a capital component. This 1991 agreement was prompted when Meritor proposed that its 12% Subordinated Capital Noteholders ("Noteholders") exchange their notes for stock and cash in order to infuse Meritor with more that $100 million of additional capital. Because the Noteholders would become shareholders, the continuation of the goodwill as a regulatory asset of Meritor was crucial to them. Therefore, before agreeing to the proposal, representatives of the Noteholders met with senior management of the FDIC, who assured them that the FDIC had no plans to disallow the grand-fathered goodwill. In fact, the FDIC encouraged the Noteholders to participate in the exchange. The exchange was completed in 1991, resulting in a $108 million increase in Meritor's capital.

On December 19, 1991, Congress adopted the FDIC Improvements Act of 1991, requiring the FDIC to adopt new rules regulating bank capital. The FDIC published draft regulations in the summer of 1991 which clearly permitted Meritor's grand-fathered goodwill to continue to be included in its capital. When the FDIC adopted final regulations in September 1991, however, the regulations differed from the proposals so as to create doubt as to whether Meritor's grand-fathered goodwill would remain as capital. The FDIC refused Meritor's request to clarify the uncertainty. The confusion created by the regulations resulted in a withdrawal of over $300 million in deposits from Meritor.

The appellants allege that, by mid-September, the FDIC and the Secretary had begun to devise a plan to seize Meritor in mid-December 1992, which was approximately

5

the time the new regulations would take effect, and to sell its assets to one of Meritor's most aggressive competitors.

On December 11, 1992, the FDIC hand-delivered a letter to Meritor reneging on its 1982 agreement and formally notifying Meritor that, under the new regulations, the grand-fathered goodwill no longer would be included in its capital base. On the same day, the FDIC also hand-delivered Meritor a "Notification to Primary Regulator" ("Notification") which stated that the FDIC Board of Directors had found that Meritor was in violation of its 1991 agreement regarding capital maintenance, was in an unsound condition, and had inadequate capital. In the Notification, the FDIC asserted that it immediately would institute proceedings to cancel Meritor's insurance if Meritor did not promptly satisfy certain capitalization requirements. Because insurance was a prerequisite to Meritor's continued operation, the demand created a crisis. The Secretary, who the FDIC notified of these matters prior to notifying Meritor, used the crisis to justify the immediate closing of the bank on the same afternoon. At that time, he appointed the FDIC as receiver of Meritor. Neither Meritor nor the appellants challenged the appointment under the state procedure available for that purpose. See Pa. Stat. Ann., tit. 71, S 733-605 (West 1990).

The appellants also allege that the FDIC and the Secretary disregarded circumstances which rendered the closing of Meritor inappropriate. In particular, eight days before the closing of the bank, Meritor sold a subsidiary bringing in capital which put it in compliance with the capital maintenance agreement. In addition, on December 9, 1992, two days prior to the closing of the bank, the FDIC received a bid of $181.3 million for Meritor's remaining operations and deposits.

In August 1994, appellants filed this action against the FDIC, both in its corporate capacity ("FDIC-Corporate") and as receiver of Meritor ("FDIC-Receiver"), various unidentified agents and employees of the FDIC ("the Doe defendants"), and the Secretary. In general, the complaint alleges that these appellees deprived the appellants of their substantive due process rights[2] and asserts claims under 42 U.S.C.

_____

2. The complaint also alleges a deprivation of the privileges and immunities guaranteed under the Fifth and Fourteenth amendments,

6

S 1983, Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999 (1971), and the Administrative Procedure Act ("APA"). The complaint also alleges that the FDIC violated various statutory duties.

By order entered March 1, 1995, the district court dismissed the due process claims, embodied in Count I, against the FDIC and the Secretary as well as appellants' APA claim in Count IV against FDIC-Corporate on the grounds that 12 U.S.C. S 1821(j) deprived it of jurisdiction to adjudicate those claims. The district court also dismissed the section 1983 claim against the FDIC, finding that the FDIC was not a "person" under that statute.

By order entered September 6, 1995, the district court dismissed the claims against the FDIC for the enforcement of its statutory duties. On November 8, 1996, the district court approved a Stipulation of Dismissal of the remaining claims against the Secretary in his individual capacity, which the court entered on November 27, 1996. Thus, following the district court's order of November 27, 1996, appellants' only remaining claims were against the Doe defendants.

On November 15, 1996, appellants moved the district court to certify its March 1, 1995 order for an interlocutory appeal. They argued that the claims involving the Doe defendants were substantially the same as those against the FDIC and an immediate appeal would avoid the waste that would occur if this court eventually overturned the district court's order. FDIC-Receiver and FDIC-Corporate objected to the certification of the March 1, 1995 order, in part because the appellants' request did not include a request to certify the September 6, 1995 order as well, which they argued would result in "piecemeal" appellate review. Thereafter, appellants agreed to an expansion of the proposed certification to include the district court's order of September 6, 1995.

On April 27, 1997, the district court denied the appellants' motion to certify its orders. The district court
_____

but we need not address this allegation in detail given our disposition of the claims.

7

dismissed the claims against the Doe defendants because there were no named parties remaining in the action and because appellants failed to identify the fictitious parties by the close of discovery. Having dismissed the claims against the Doe defendants, the court concluded that its orders were final so that it therefore denied the appellants' motion to certify as moot. On May 6, 1997, they filed a notice of appeal.

III. DISCUSSION

A. TIMELINESS OF APPEAL

An untimely appeal does not vest an appellate court with jurisdiction. See Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 561 (1978); Marcangelo v. Boardwalk Regency, 47 F.3d 88, 91 (3d Cir. 1995). To be timely, the notice of appeal must have been filed within 60 days from the date of the district court's entry of a final judgment. See 28 U.S.C. S 1291; Fed. R. App. P. 4(a)(1) (establishing a 60-day period for appeal where a federal agency or officer is a party). In general, a judgment is not final for purposes of appeal until the district court has disposed of all claims against all parties. See Buzzard v. Roadrunner Trucking, Inc., 966 F.2d 777, 779 (3d Cir. 1992); Jackson v. Hart, 435 F.2d 1293, 1294 (3d Cir. 1970) (per curiam).

Appellees have filed a motion to dismiss this appeal as untimely. They argue that the district court's orders were final, thereby starting the running of the time to appeal, on November 27, 1996, upon the district court's dismissal of all claims except those against the Doe defendants. Thus, appellees aver that this appeal is untimely because the appellants did not file a notice of appeal until May 6, 1997, 179 days after the district court's entry of a final judgment. We reject appellees' argument and hold that appellants timely filed this appeal so that we have jurisdiction to consider the appeal on its merits.

Doe defendants "are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." Scheetz v. Morning Call, Inc., 130 F.R.D. 34,

8

36 (E.D. Pa. 1990) (citations omitted). The case law is clear that "[f]ictitious parties must eventually be dismissed, if discovery yields no identities," id. at 37, and that an action cannot be maintained solely against Doe defendants. See Scheetz v. Morning Call, Inc., 747 F. Supp. 1515, 1534–35 (E.D. Pa. 1990) (noting that Federal Rules do not contemplate a plaintiff proceeding without a tangible defendant except in extraordinary circumstances), aff'd on other grounds, 946 F.2d 202 (3d Cir. 1991); Breslin v. City and County of Philadelphia, 92 F.R.D. 764 (E.D. Pa. 1981) (dismissing complaint against identified defendants warrants dismissing unnamed defendants).

Appellees conclude from these cases that Doe defendants are deemed dismissed, without a formal order by the district court, if they remain unnamed at the close of discovery or upon the district court's dismissal of all named defendants. We, however, need not reach the issue of whether the district court's order became final on November 27, 1996, by virtue of such a deemed dismissal of the Doe defendants.3 Even if a final order was entered on that date, this appeal was timely because the "Motion to Certify for Immediate Appeal" which appellants filed on November 15, 1996, was the functional equivalent of a notice of appeal and therefore satisfies the requirements of Fed. R. App. P. 3.

Fed. R. App. P. 3(c) requires that a notice of appeal specify the parties taking the appeal and the orders from which the parties appeal. Despite these requirements, an "appeal will not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." Id.

_____

3. We have case law indicating that "[a]n order that effectively ends the litigation on the merits is an appealable final judgment even if the district court does not formally include judgment on a claim that has been abandoned" by a party. Lusardi v. Xerox Corp., 975 F.2d 964, 970 n.9 (3d Cir. 1992) (quoting Jones v. Celotex Corp., 867 F.2d 1503, 1503–04 (5th Cir. 1989) (per curiam)); see also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 667 (7th Cir. 1986). We again recognize this authority, but need not decide whether it would apply in this case because, as explained above, this appeal would be timely without reliance on it.

Courts liberally construe the requirements for a notice of appeal. See Smith v. Barry, 502 U.S. 244, 248, 112 S.Ct. 678, 681-82 (1992); Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17, 108 S.Ct. 2405, 2408-09 (1988). Thus, courts can find that a litigant has satisfied the requirements of Rule 3(c) even if the litigant files a document that is "technically at variance with the letter of [Rule 3] . . . if the litigant's action is the functional equivalent of what the rule requires." Torres, 487 U.S. at 316-17, 108 S.Ct. at 2408-09. Therefore, if a litigant files a document, regardless of its title, within the time for appeal under Fed. R. App. P. 4, it is effective as a notice of appeal provided that it gives sufficient notice of the party's intent to appeal. See Smith, 502 U.S. at 248-49, 112 S.Ct. at 682.

We have held that a "Petition for Permission to Appeal" filed under the mistaken belief that the district court's order was interlocutory, but which notified the parties and the court of the intention to appeal, functioned as a notice of appeal. See Landano v. Rafferty, 970 F.2d 1230, 1237 (3d Cir. 1992); see also San Diego Comm. Against Registration and the Draft v. Governing Bd. of Grossmont Union High Sch. Dist., 790 F.2d 1471, 1473-74 (9th Cir. 1986) (construing a Fed. R. App. P. 5(a) motion as a notice of appeal).

In this case, appellants filed documents which were the "functional equivalent" of a notice of appeal. On November 15, 1996, appellants filed a "Motion to Certify for Immediate Appeal" in which they sought leave to file an interlocutory appeal of the district court's March 1, 1995 order. Thus, even if the March 1 order became final on November 27, 1996, we will treat the motion, which specifically indicated an intention to appeal, and which was filed in the belief that the order remained interlocutory, as a notice of appeal. See Landano, 970 F.2d at 1237. Subsequently, appellants also filed a reply to appellees' objection to the certification, which requested to expand the proposed certified appeal to include the district court's September 6, 1995 order. Taken together, these documents notify the parties and the court as to appellants' specific intention to seek appellate review of both orders. Therefore, the documents were the functional equivalent of a de jure notice of appeal.

10

Furthermore, appellants filed these documents within the period for a timely appeal under Rule 4. The "Motion to Certify for Immediate Appeal" was filed after the district court approved the stipulation of dismissal but before the order actually was entered. Rule 4(a)(2) specifically addresses this scenario as it provides that "[a] notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry" of that order. Pursuant to this rule, we treat the motion as filed on November 27, 1996, after the entry of the dismissal order. Accordingly, this appeal is timely.4

B. DUE PROCESS AND APA CLAIMS

On March 1, 1995, the district court held that 12 U.S.C. S 1821(j) deprived it of jurisdiction over appellants' due process and APA claims, Counts I and IV respectively, and therefore dismissed those counts against all appellees. By the same order, the district court also dismissed Count III, a 42 U.S.C. S 1983 claim, as against the FDIC for failure to state a claim because the FDIC is not a "person" within that statute.5

We begin our merits analysis with a discussion of the appellants' First Amended Complaint. The district court analyzed the complaint as though Count I asserted an independent cause of action for a due process violation against all appellees. We do not adopt this construction of the complaint.

Count I seeks the following remedies based upon an alleged due process violation: (1) a declaration that the

_____

4. In any event, Judge Roth and Judge Seitz conclude that this case is appealable because a timely notice of appeal was filed from the order dismissing the Doe defendants.

5. Count III also asserts a section 1983 claim against the Secretary in his individual capacity. On November 27, 1996, the district court entered a Stipulation of Dismissal of the claims against the Secretary in his individual capacity. This appeal, therefore, does not concern Count III to the extent it asserts a claim against the Secretary in his individual capacity.

FDIC, Doe defendants and the Secretary violated appellants' substantive due process rights; (2) a declaration that the FDIC's notification is void and a rescission thereof; (3) a declaration of the invalidity of the Secretary's orders closing Meritor and appointing FDIC as receiver and rescissions thereof; and (4) the imposition of a constructive trust for Meritor's benefit nunc pro tunc. This count, however, does not identify the source of the substantive cause of action for the alleged constitutional violation as against each appellee.

Accordingly, FDIC–Corporate urges us to dismiss Count I as improperly seeking declaratory relief without asserting a substantive cause of action. We decline to view the complaint so narrowly. Rather, we are required to construe the pleadings "as to do substantial justice," Fed R. Civ. P. 8(f), and in favor of the appellants. See Budinsky v. Commonwealth of Pa. Dep't of Envtl. Resources, 819 F.2d 418, 421 (3d Cir. 1987); see also West v. Keve, 571 F.2d 158, 163 (3d Cir. 1978) (liberally construing a complaint, which literally only sued defendants in their official capacities, so as also to state a claim against the defendants in their individual capacities because the complaint stated facts sufficient to constitute such a claim).

The due process violations alleged in Count I against the FDIC and the Doe defendants properly are viewed as constitutional claims asserted under section 1983 and Bivens, as alleged in Counts III and II respectively. Therefore, Count I does not assert a separate cause of action against these defendants, but seeks declaratory and injunctive relief in addition to the relief requested in Counts II and III.

The due process claim alleged against the Secretary in his official capacity is a different matter, however, because the complaint does not elsewhere identify a substantive cause of action against the Secretary in his official capacity for a due process violation. While Count III asserts a claim against the Secretary, it does so only in his individual capacity. Accordingly, although the complaint does not explicitly identify this claim as such, we construe it as asserting a section 1983 claim against the Secretary in his official capacity.

12

Thus, we proceed with our analysis as though the relief sought in Count I against the FDIC and the Doe defendants was sought in the counts alleging a right to relief pursuant to section 1983 and Bivens. Although our analysis of these counts takes a different course than that of the district court, we ultimately affirm its dismissal of these claims. We, like the district court, will not discuss the merits of the Bivens claim because the Doe defendants properly were dismissed on other grounds.

1. Section 1983 Claim

We begin our analysis with a discussion of the section 1983 claim asserted against the FDIC. The district court dismissed this claim, holding that the FDIC was not a "person" within the meaning of section 1983 and therefore was not subject to section 1983 liability. The complaint alleges that the FDIC, under color of state law, acted in concert with the Secretary and deprived appellants of their substantive due process rights. The district court held that the FDIC could not be held liable under section 1983 because it was not a "person" within the meaning of the statute. We agree.

Section 1983 creates a cause of action against "[e]very person who, under color of any [state law] . .. subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. S 1983. Because section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law. See District of Columbia v. Carter, 409 U.S. 418, 425, 93 S.Ct. 602, 606 (1973); see also Daly–Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1988) (no section 1983 claim against federal officials acting pursuant to federal law); Zernial v. United States, 714 F.2d 431, 435 (5th Cir. 1983) (action taken pursuant to federal law by federal agents and private parties); Kite v. Kelly, 546 F.2d 334, 337 (10th Cir. 1976) (section 1983 is not applicable to federal officers acting under federal law); Scott v. United

13

States Veteran's Admin., 749 F. Supp. 133, 134 (W.D. La. 1990) (federal government and its agencies acting under federal law are not "persons" within section 1983), aff'd, 929 F.2d 146 (5th Cir. 1991) (per curiam).

It is a well-established principle, however, that federal officials are subject to section 1983 liability when sued in their official capacity where they have acted under color of state law, for example in conspiracy with state officials. See, e.g., Melo v. Hafer, 912 F.2d 628, 638 (3d Cir. 1990), aff'd on other grounds, 502 U.S. 21, 112 S.Ct. 358 (1991); Jorden v. National Guard Bureau, 799 F.2d 99, 111 n.17 (3d Cir. 1986) (citing Knights of the Klu Klux Klan v. East Baton Rouge Parish, 735 F.2d 895, 900 (5th Cir. 1984)); see also Strickland v. Shalala, 123 F.3d 863, 866 (6th Cir. 1997); Cabrera v. Martin, 973 F.2d 735, 741 (9th Cir. 1992); Olson v. Norman, 830 F.2d 811, 821 (8th Cir. 1987).

The allegations in the section 1983 claim, however, are against a federal agency, the FDIC, not federal officials. We find no authority to support the conclusion that a federal agency is a "person" subject to section 1983 liability, whether or not in an alleged conspiracy with state actors. We, therefore, hold that federal agencies are not "persons" subject to section 1983 liability.6

In Accardi v. United States, 435 F.2d 1239, 1241 (3d Cir. 1970), we held that "[t]he United States and other governmental entities are not `persons' within the meaning of Section 1983." We reject appellants' suggestion that subsequent decisions of the Supreme Court have undermined Accardi's authority, except to the extent that the Court now recognizes municipal liability under section 1983.7 See Monell v. Department of Soc. Servs., 436 U.S.

---

6. We note that two district courts in this circuit recently have come to the same conclusion. See Alexander v. Hargrove, 1997 WL 14436, No. Civ. 93-5510 (E.D. Pa. Mar. 31, 1995); Hurt v. Philadelphia Hous. Auth., 806 F. Supp. 515, 524 (E.D. Pa. 1992).

7. In particular, appellants contend that in Accardi we relied on the Supreme Court's narrow interpretation of "person" in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473 (1961), which the Court overruled in Monell v. Department of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018 (1977), to the

658, 98 S.Ct. 2018 (1977). Accardi's holding that the United States was an improper party in a section 1983 action, see Accardi, 935 F.2d at 1242, is not affected by the Supreme Court's subsequent recognition of municipal liability. Because the United States is not a proper defendant in a section 1983 action, neither is a federal agency, an arm of the sovereign. See United States v. Vital Health Prods., Ltd., 786 F. Supp. 761, 778 (E.D. Wis. 1992), aff 'd without opinion sub nom., United States v. LeBeau, 985 F.2d 563 (7th Cir. 1993); John's Insulation, Inc. v. Siska Const. Co., 774 F. Supp. 156, 161 (S.D.N.Y. 1991).

We also note that, relying upon Accardi, the Court of Appeals for the Fifth Circuit has held that "a federal agency is . . . excluded from the scope of section 1983 liability." See Hoffman v. United States Dep't of Hous. & Urban Dev., 519 F.2d 1160, 1165 (5th Cir. 1975); see also LaRouche v. City of New York, 369 F. Supp. 565, 567 (S.D.N.Y. 1974) (holding that the CIA, a federal agency, is not a person under section 1983).

For the reasons set forth above, we affirm the district court's dismissal of the section 1983 claim against the FDIC. In light of our discussion regarding the proper

_____

extent that Monroe held that local governments were not subject to section 1983 liability.

Although in Accardi we did not cite Monroe, we did rely on three cases which rejected liability for local government agencies based upon Monroe. See Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684 (1961); United States v. County of Phila., 413 F.2d 84 (3d Cir. 1969); Broome v. Simon, 255 F. Supp. 434 (W.D. La. 1966). Appellants argue that because Monell reversed Monroe by holding that local governments are subject to suit under section 1983, the efficacy of Accardi has been undermined.

Appellants essentially argue that under Monell and the Supreme Court's subsequent decision in Will v. Michigan Dep't of State Police, 491 U.S. 58, 69, 109 S.Ct. 2304, 2311 (1989), federal entities are subject to suit under section 1983. In Monell, the Court interpreted "person" for purposes of section 1983 to include "bodies politic and corporate." See Monell, 436 U.S. at 688–89, 98 S.Ct. at 2034–35. Appellants argue that the FDIC is within the meaning of "bodies politic and corporate" because 12 U.S.C. S 1819 expressly characterizes the FDIC as a "body corporate." We reject this rationale.

15

construction of the complaint, our dismissal of the section 1983 claim makes it unnecessary to discuss whether 12 U.S.C. S 1821(j) would preclude the district court from granting the declaratory and injunctive relief requested in Count I to the extent it would operate against the FDIC.

## 2. Bivens Claim

Because we affirm the district court's dismissal of all of appellants' claims against the named appellees, we, like the district court, need not address the merits of appellants' Bivens claim against the Doe defendants. Rather, we affirm the dismissal of this claim because an action cannot proceed solely against unnamed parties. See Scheetz, 747 F. Supp. at 1534.

## 3. APA Claim

### a. 12 U.S.C. S 1821(j)

We turn next to Count IV of appellants' complaint, which seeks APA review of the FDIC's issuance of the Notification finding that Meritor was operating in an unsafe and unsound condition. Count IV alleges that the FDIC's determinations, as embodied in the Notification, were arbitrary, capricious, an abuse of discretion and in violation of appellants' constitutional rights. Appellants thus seek the following remedies: (1) a declaration that thefindings are null and void; (2) a rescission of the declarations; and (3) the imposition of a constructive trust. The district court dismissed this claim as precluded by 12 U.S.C. S 1821(j). We agree.

The Financial Institutions, Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") establishes a comprehensive scheme for conservatorships and receiverships of insured financial institutions. See Richard B. Gallagher, Annotation, Construction and Application of Anti-Injunction Provision of Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) (12 U.S.C.A. S 1821(j)), 126 A.L.R. Fed. 43, 53 (1995). The FDIC8 may be appointed as a conservator or receiver of an insured

_____

8. FIRREA grants the Resolution Trust Corporation ("RTC") the same powers and protections as the FDIC when the RTC operates as a receiver. See 12 U.S.C. S 1441a(b)(5),S 1441a(b)(4); see also Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 112 n.6 (1st Cir. 1994).

16

financial institution if, inter alia, the institution becomes insolvent. See 12 U.S.C. S 1821(c); Gallagher, supra, at 53. FIRREA also includes an anti-injunction provision intended to permit the FDIC to perform its duties as conservator or receiver promptly and effectively without judicial interference. See 12 U.S.C. S 1821(j); Gallagher, supra, at 54. Section 1821(j) provides in relevant part that

> [e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. S 1821(j).

In making the determinations and issuing the Notification, the FDIC clearly was acting in its corporate capacity. Appellants argue that the district court erred in dismissing the APA claim based upon section 1821(j) because the section does not preclude judicial intervention where the FDIC acts in its corporate capacity. Thus, appellants would have us interpret section 1821(j) to preclude only those orders directly against the FDIC as receiver or as conservator.

We find, however, that the plain language of the statute is not so limited. Rather, the statute, by its terms, can preclude relief even against a third party, including the FDIC in its corporate capacity, where the result is such that the relief "restrain[s] or affect[s] the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. S 1821(j) (emphasis added). After all, an action can "affect" the exercise of powers by an agency without being aimed directly at it.

We note that our holding is not inconsistent with our decision in Rosa v. RTC, 938 F.2d 383, 397, 400 (3d Cir. 1991).9 In Rosa, we did not decide the reach of section 1821(j) because the RTC conceded that the anti-injunction
_____

9. This provision applies equally to the RTC. Thus, in considering the scope of section 1821(j)'s bar of equitable relief, courts refer to and rely
upon cases involving the RTC and the FDIC interchangeably. See Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 112 n.6 (1st Cir. 1994).

17

provision did not preclude the district court orders running against it in its corporate capacity. See Rosa, 938 F.2d at 397, 400. Thus, Rosa did not hold that section 1821(j) allows an injunction against the FDIC in its corporate capacity. Further, because the court did not discuss the issue, the nature of the district court orders running against the RTC in its corporate capacity is not clear; thus, it is unclear whether the order running against the RTC in its corporate capacity would have had the type of effect we now describe. We, therefore, find that Rosa does not control the issue which we now confront.

Likewise, we note that the opinions of other courts of appeals do not speak directly to the issue at hand. See Bursik v. One Fourth St. N., Ltd., 84 F.3d 1395, 1397 (11th Cir. 1996) (the section applies only if the RTC is acting in its capacity as receiver); Fischer v. RTC, 59 F.3d 1344, 1347 (D.C. Cir. 1995) (noting in dicta that courts have interpreted the section not to apply where the FDIC is acting in its corporate, as opposed to its receiver or conservator, capacity); Sierra Club v. FDIC, 992 F.2d 545, 548–51 (5th Cir. 1993) (holding that the court could enjoin the FDIC because it was acting in its corporate capacity).

The Court of Appeals for the First Circuit has indicated quite clearly that a court order which operates against a third party is precluded by section 1821(j) if the order would have the same effect from the FDIC's perspective as a direct action against it precluded by section 1821(j). See Telematics Int'l, Inc. v. NEMCL Leasing Corp., 967 F.2d 703, 707 (1st Cir. 1992). The Telematics court held that the district court could not enjoin the FDIC from foreclosing on a security interest. See id. at 705. But the court went further and also stated the following:

> Telematics argues that even if the district court lacked the power to enjoin the FDIC from attaching the certificate of deposit held by Fleet Bank, the court nevertheless maintained the authority to allow Telematics to attach the certificate of deposit. The district court concluded that it lacked such authority, and we agree. Permitting Telematics to attach the certificate of deposit, if that attachment were effective against the FDIC, would have the same effect, from the

18

> FDIC's perspective, as directly enjoining the FDIC from
> attaching the asset. In either event, the district court
> would restrain or affect the FDIC in the exercise of its
> powers as receiver. Section 1821(j) prohibits such a
> result.

Id. at 707 (emphasis added). We agree with the Court of Appeals for the First Circuit's pragmatic suggestion that section 1821(j) precludes a court order against a third party which would affect the FDIC as receiver, particularly where the relief would have the same practical result as an order directed against the FDIC in that capacity.

The relief appellants seek in this case clearly would "affect the exercise of powers or functions of the [FDIC] as conservator or receiver." Appellants' Count IV seeks a declaration that the Notification was void ab initio and a rescission thereof. Because the FDIC's findings directly and proximately caused the Secretary to close Meritor, the appellants also seek the imposition of a constructive trust as of the date Meritor was seized. Here, the requested relief against the FDIC–Corporate clearly would affect the FDIC's continued functioning as receiver and it effectively would throw into question every act of FDIC–Receiver.

Our opinion, however, should not be overread. The affecting of the powers of the FDIC-Receiver in this case, which appellants' requested relief would cause, if granted, would be dramatic and fundamental. We do not suggest that we would reach the same result in a case in which the effect on the FDIC of an order against a third party would be of little consequence to its overall functioning as receiver. That type of situation is not before us.

We reject appellants' contention that section 1818(j) cannot be interpeted to bar their constitutional claims because Congress did not express a clear intent for the section to preclude review of constitutional claims. See Webster v. Doe, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053 (1988). The Webster Court noted that this heightened standard is intended to avoid the "serious constitutional question" which would result if a court interpreted a federal statute so as to deny all judicial review of a constitutional claim. See id. at 603, 108 S.Ct. at 2053. Our interpretation

19

of section 1821(j) only denies appellants the declaratory and injunctive relief they now seek, but does not deny them judicial review for their constitutional claims. Courts uniformly have held that the preclusion of section 1821(j) does not affect a damages claim. See, e.g., Sharpe v. FDIC, 126 F.3d 1147, 1155 (9th Cir. 1997); Volges v. RTC, 32 F.3d 50, 53 (2d Cir. 1994); RPM Investments, Inc. v. RTC, 75 F.3d 618, 622 (11th Cir. 1996). Thus, our holding does not deny appellants a judicial remedy for an appropriate damages claim.[10]

b. Availability of APA Review

Even if we agreed that section 1821(j) did not preclude the relief appellants seek, we would affirm the district court's dismissal of their claim for review under the APA because such review is not available in this instance. The APA grants a right of judicial review of an agency action to "[a] person suffering legal wrong because of any agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. S 702. This right of review, however, is limited. First, the APA only provides for review of those actions "made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. S 704. Second, the APA withdraws the right of review "to the extent that statutes preclude judicial review." 5 U.S.C. S 701(a)(1).

We find that the district court did not have jurisdiction to

_____

10. We recognize that the defendants in such an action might be able to assert various defenses but our concern here is only with the statute we are construing. This is also the circumstance in other places in the opinion in which we recognize the possibility of the bringing of a damages action.

In fact, shareholders of Meritor have brought a damages action in the United States Court of Federal Claims against the United States predicated on the alleged wrongful issuance of the Notification. See Slattery v. United States, 35 Fed. Cl. 180 (1996). According to appellants this action is still pending and is predicated both on constitutional and breach of contract principles. Br. at 15-16. The Court of Federal Claims rather than this court will make the determination of what effect, if any, this opinion has in that litigation.

20

review the FDIC-Corporate's issuance of the Notification because (1) it was not a final agency action, and (2) review expressly is barred by 12 U.S.C. S 1818(i)(1) and jurisdiction therefore is withdrawn pursuant to 5 U.S.C. S 701(a)(1).

The APA provides for review of a "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. S 704, but the APA does not define what constitutes a "final" agency action. The Supreme Court has stated that the "core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797, 112 S.Ct. 2767, 2773 (1992). The action must be a "definitive statement of [the agency's] position" with concrete legal consequences. FTC v. Standard Oil Co., 449 U.S. 232, 241, 101 S.Ct. 488, 493 (1980); see also Darby v. Cisneros, 509 U.S. 137, 144, 113 S.Ct. 2539, 2543 (1993). We have held that "thefinality of [an agency action] is determined by its consequences" or its practical effects. Shea v. Office of Thrift Supervision, 934 F.2d 41, 44 (3d Cir. 1991); see also In re Seidman, 37 F.3d 911, 923 (3d Cir. 1994).

FDIC-Corporate issued Meritor a Notification which stated that, as a result of the grand-fathered goodwill no longer being considered in Meritor's capital base, Meritor was undercapitalized and in violation of the FDIC agreement. In the Notification, the FDIC also notified Meritor that procedures would be initiated to cancel Meritor's deposit insurance if Meritor did not come into immediate compliance with certain capital requirements. Based upon this information, the Secretary closed Meritor the same day that FDIC-Corporate issued the Notification.11

We agree with FDIC-Corporate that the Notification at issue here was "the first step in a multi-step statutory

_____

11. The Secretary presumably acted pursuant to Pa. Stat. Ann., tit. 71, S 733-504(B) (West 1990), which states, in relevant part, that the Secretary need not conduct a hearing prior to taking possession of a financial institution "whenever immediate action shall be necessary in order to protect the interests of the depositors, other creditors, or shareholders of an institution."

procedure which must be followed when FDIC-Corporate considers terminating an institution's deposit insurance." Br. of Appellee FDIC-Corporate at 12; see also 12 U.S.C. S 1818(a)(2). After such a notification is issued, to terminate an institution's deposit insurance, the FDIC also, inter alia, must give notice of a hearing and conduct a hearing pursuant to statutory requirements. See 12 U.S.C. S 1818(a). In the context of this statutory procedure, the issuance of the Notification does not represent the FDIC's definitive statement regarding the termination of a financial institution's insurance status.

In Standard Oil, the Supreme Court held that the Federal Trade Commission's ("FTC") issuance of a complaint was not a final agency action and therefore was not reviewable under the APA. See Standard Oil, 449 U.S. at 238, 101 S.Ct. at 492. The Court reasoned that the complaint was, by its terms, not a definitive statement; rather, the complaint only was indicative of a "reason to believe" that the party was violating the law. See id. at 241, 101 S.Ct. at 493-94. The Court found that the complaint was a determination that an administrative proceeding would be commenced but did not have the legal force or practical effect on the party's daily business activities indicative of a final agency determination. See id., 101 S.Ct. at 494. The Court noted that the finality requirement has been interpreted "in a pragmatic way." See id. at 239, 101 S.Ct. at 493.

We find that the issuance of the Notification was not the FDIC's definitive statement. See id. at 241, 101 S.Ct. at 493. Furthermore, the issuance of the Notification did not have the type of effect we described and required in Shea v. Office of Thrift Supervision to be a final, reviewable action, namely that the agency action must be one that "impose[s] an obligation, den[ies] a right, or fix[es] some legal relationship as a consummation of the administrative process." Shea, 934 F.2d at 44. Rather, the action that had legal effect was the Secretary's decision to close the bank, not the FDIC's issuance of the Notification.

We also agree with the Court of Appeals for the Ninth Circuit, which has held that where a state actor relies upon a federal agency's notice, the state action does not convert

22

the notice into a final agency act under the APA. See Air California v. United States Dep't of Transp., 654 F.2d 616, 621 (9th Cir. 1981). In Air California, the Orange County Board of Supervisors ("Board") had adopted a policy designed to freeze the level of operations at the Orange County Airport. See id. at 618. This policy resulted in the exclusion of new carriers, ultimately inuring to the benefit of Air California, an existing carrier at the airport. See id.

Thereafter, the Board entered into agreements with the Federal Aviation Administration ("FAA") to gain federal airport funds, thereby subjecting the airport to federal regulations. See id. The FAA held a hearing to investigate allegations by carriers who unsuccessfully had applied for authorization to use the airport that the airport policy violated federal law. See id. Following an investigatory hearing, the FAA's Chief Counsel sent a letter to the Board warning that failure to comply with federal regulations would result in the FAA pursuing sanctions, but that no formal action would be taken for 30 days. See id. The FAA never took formal action, but as a result of the letter to the Board, the Board met and decided to reallocate theflights to include additional carriers, thereby reducing the number of flights for which Air California was authorized. See id. Air California then sought APA review of the FAA letter. See id. The court held that the letter was not a final agency order because the Board's action, not the FAA letter, immediately affected Air California's rights. See id. at 621.

We reject appellants' attempt to distinguish Standard Oil and Air California; according to appellants, these cases are distinguishable because of the conspiracy the appellants allege existed here. While appellants acknowledge that the Notification could have been the beginning of an internal adjudicative process, as in Standard Oil, they argue that this possibility is immaterial in this factual context. Here, appellants contend that the Notification was not intended to commence an administrative investigation. They assert that by virtue of the alleged conspiracy, the FDIC knew and intended that the Secretary would close Meritor immediately when he received the Notification. Appellants also argue that the complicity involved distinguishes the FDIC's Notification from the FAA letter in Air California

23

because the FDIC issued the Notification knowing and intending it directly to affect Meritor. In addition, appellants assert that because the FDIC specifically targeted Meritor whereas the FAA directed its attention to the Board, not to the plaintiffs therein, there is a more direct effect on Meritor associated with the FDIC's action than there was on the plaintiff in Air California by reason of the challenged action in that case.

We acknowledge that the Secretary's closing of Meritor precluded the need for a final agency action terminating Meritor's insured status. However, appellants' failure to challenge the appointment of the receiver under the available state procedure, see Pa. Stat. Ann., tit. 71, S 733-605 (West 1990), does not convert the Notification, an otherwise preliminary step in FDIC procedure, into afinal agency action reviewable under 5 U.S.C. S 704.

APA review is unavailable in this case also because 12 U.S.C. S 1818(i) precludes judicial review of the Notification, and the APA does not allow judicial review where another statute specifically prohibits it, see 5 U.S.C. S 701(a)(1). Section 1818(i) precludes review of orders and notices except as specifically provided elsewhere in section 1818. Section 1818(i)(1) provides in relevant part that

> except as otherwise provided in this section . . . no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.

The Supreme Court has found that this language is clear. See Board of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc., 502 U.S. 32, 39, 112 S.Ct. 459, 463 (1991). In MCorp, the Court held that section 1818(i)(1) "provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings." MCorp, 502 U.S. at 44, 112 S.Ct. at 466; see also Groos Nat'l Bank v. Comptroller of the Currency, 573 F.2d 889, 895 (5th Cir. 1978) (noting that the section "in particular evinces a clear intention that this regulatory process is not to be disturbed

24

by untimely judicial intervention, at least where there is no `clear departure from statutory authority' ").

The question we now face is whether the section 1818(i) applies only where there is such an ongoing administrative proceeding. As discussed above, here there is no such proceeding because the Secretary's decision to close Meritor based upon the Notification eviscerated the need for further proceedings to terminate Meritor's insured status. Moreover, to our knowledge, the only case law involving section 1818(i) is in the context of an ongoing administrative proceeding.

Yet the plain language of section 1818(i) broadly precludes the review of the issuance of any notice under any subsection. See 12 U.S.C. S 1818(i)(1); Henry v. Office of Thrift Supervision, 43 F.3d 507, 512 (10th Cir. 1994) (rejecting contention that the "orders" referred to in section 1818(i) are limited to those issued after administrative hearings). Further, while section 1818 provides for review of certain notices and orders, such as those issued after a hearing, see 12 U.S.C. S 1818(a)(5) (providing for review of an order terminating an institution's insured status); 12 U.S.C. S 1818(h) (providing for review of orders and notices issued after required hearings), it does not provide for review of the issuance of this Notification, which was issued pursuant to section 1818(a)(1). Thus, by its terms section 1818(i) applies to this case and is not restricted to precluding judicial review which would interfere with an ongoing administrative proceeding. Based upon this plain meaning, we conclude that the district court did not have jurisdiction to review the issuance of the Notification.

Courts, however, have recognized a limited exception to a statute's specific withdrawal of jurisdiction where the plaintiff claims that the agency acted in a blatantly lawless manner or contrary to a clear statutory prohibition. See, e.g., Abercrombie v. Office of the Comptroller of Currency, 833 F.2d 672, 674-75 (7th Cir. 1987); First Nat'l Bank of Grayson v. Conover, 715 F.2d 234, 236 (6th Cir. 1983); Groos Nat'l Bank, 573 F.2d at 895. The roots of this so-called "statutory-authority" exception are in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180 (1958).

25

The Supreme Court has considered the application of this exception to section 1818(i). See Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 112 S.Ct. 459. In MCorp, the Court declined to apply the exception, distinguishing it in two respects from the situation in Kyne. First, the Court found that there were adequate means of review available upon a final determination by the agency. Second, the Court held that Kyne did not apply because there the preclusion was implied from congressional silence, whereas the preclusion of section 1818(i) was express and clear. See id. at 43–44, 112 S.Ct. at 465–66.

We recently have addressed the "statutory–authority" exception and emphasized that an integral factor in determining the applicability of the exception is the clarity of the statutory preclusion. See Clinton County Comm'rs v. EPA, 116 F.3d 1018, 1928–29 (3d Cir. 1997) (en banc) (citing Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 112 S.Ct. 459; Briscoe v. Bell, 432 U.S. 404, 97 S.Ct. 2428 (1977)), cert. denied, 118 S.Ct. 687 (1998). In rejecting the plaintiffs' contention that review was available under Kyne, in Clinton County we held that, as with section 1818(i), the section precluding review provided " `clear and convincing evidence' . . . that Congress intended to deny the district court jurisdiction to review EPA's ongoing remedial action." Clinton County, 116 F.3d at 1029.

We find that this exception does not apply to this case primarily for two reasons. First, the exception does not apply in the face of such clear preclusive language. Second, the FDIC did not act in a blatantly lawless manner. Although appellants may object to the FDIC's conclusions, the FDIC acted pursuant to the requirement that it notify a financial institution upon making a determination that the financial institution was operating in an unsafe financial condition. See 12 U.S.C. S 1818(a)(2).

We have not overlooked the appellants' arguments regarding the effect of our interpretation of the jurisdictional bar. First, they argue that where, as here, the FDIC knowingly acts to eliminate section 1818 administrative review, section 1818(i)(1) cannot preclude judicial review, because the effect would be to preclude all

review of the issuance of the Notification. We reject this contention because the result of our holding with respect to the preclusion of section 1818(i) is to bar only APA review of the FDIC's issuance of the Notification. We are not moved by the lack of a remedy under the APA because section 1818(i) only precludes court action which would "affect by injunction or otherwise the issuance or enforcement" of the Notification. We see no reason why, under proper circumstances, a plaintiff could not institute, and a district court could not entertain, an action for damages based upon the FDIC's allegedly wrongful conduct without offending section 1818(i).

Second, appellants argue that that we should not construe section 1818(i)(1) to bar their constitutional claims because Congress clearly must express an intent to preclude review of constitutional claims. See Webster, 486 U.S. at 603, 108 S.Ct. at 2053. We reject this argument for the same reasons that we rejected it above in the context of the jurisdiction bar of section 1821(j). Again, section 1818(i)(1) precludes the declaratory and injunctive relief sought here, but on its face would not affect an appropriate constitutional claim for damages.

4. Due Process Claim Against Secretary

We now turn to the claim in Count I against the Secretary which seeks a declaration of the unconstitutionality of the Secretary's order closing Meritor and a rescission thereof. As noted above, we will treat this claim as one based upon section 1983 against the Secretary in his official capacity. On appeal, the Secretary raises an Eleventh Amendment objection to this claim. For the reasons we discuss below, we recognize but need not reach the Eleventh Amendment issue raised by this claim because we find that the district court correctly dismissed this claim as barred by 12 U.S.C. S 1821(j).

In general, the Eleventh Amendment prevents suits in federal court against states, or state officials if the state is the real party in interest. See Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350 (1945). The Amendment, however, does not bar such suits where

27

the state has waived its immunity, see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 3145 (1985), Congress validly has abrogated the state's immunity under the Fourteenth Amendment, see Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 116 S.Ct. 1114 (1996), or the well-established exception of Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908), applies.

Of these narrow exceptions, the only one that arguably applies in this case is that under Young. The principle which emerges from Young and its progeny is that a state official sued in his official capacity for prospective injunctive relief is a person within section 1983, and the Eleventh Amendment does not bar such a suit. See Hafer v. Melo, 502 U.S. 21, 27, 112 S.Ct. 358, 362-63 (1991); Will v. Department of State Police, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304, 2312 n.10 (1989); Kentucky v. Graham , 473 U.S. 159, 167 n.14, 105 S.Ct. 3099, 3106 n.14 (1985) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State.") (citing Young, 209 U.S. 123, 28 S.Ct. 441).

Thus, the Eleventh Amendment does not bar this claim against the Secretary, provided that the relief appellants seek properly is construed as "prospective injunctive relief" or is ancillary to such relief. See Quern v. Jordan, 440 U.S. 332, 347-49, 99 S.Ct. 1139, 1148-49 (1979). The type of prospective relief permitted under Young is relief intended to prevent a continuing violation of federal law. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, 113 S.Ct. 684, 688 (1993) (the Young exception "does not permit judgments against state officers declaring that they violated federal law in the past"); Papasan v. Allain, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 2940 (1986) (the focus of the Young exception is on addressing ongoing violations of federal law).

Appellants seek threefold relief against the Secretary: (1) a declaration that the Secretary's order closing Meritor was unconstitutional; (2) a rescission of the Secretary's order closing Meritor; and (3) the imposition of a constructive trust nunc pro tunc. We, however, need not reach the issue of whether that relief would be prospective because we recognize that we need not decide difficult jurisdictional

28

issues where we can decide the case on another dispositive issue in favor of the party who would benefit by a ruling that we do not have jurisdiction. See Georgine v. Amchem Prods., Inc., 83 F.3d 610, 623 (3d Cir. 1996) (citing Norton v. Mathews, 427 U.S. 528, 530-33, 96 S.Ct. 2771, 2774-76 (1976); Elkin v. Fauver, 969 F.2d 48, 52 n.1 (3d Cir. 1992)), aff'd sub nom., Amchem Prods., Inc. v. Windsor, 117 S.Ct. 2231 (1997).

Although the issue here involves the application of the Eleventh Amendment rather than subject matter jurisdiction, we find that the issue "sufficiently partakes of the nature of a jurisdictional bar" to justify our application of the principle recognized in Georgine. See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 131 F.3d 353, 365 (3d Cir. 1997) (quoting Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363 (1974)). Moreover, like the jurisdictional issues avoided in Georgine, questions under the Eleventh Amendment issue are constitutional in scope. Courts, of course, will avoid such questions where possible. See, e.g., Spector Motor Servs., Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154 (1944).

Largely for the reasons we stated above regarding the scope of section 1821(j), we agree with the district court that section 1821(j) would bar the declaratory and injunctive relief sought against the Secretary. As discussed above, section 1821(j) precludes injunctive and declaratory relief which would restrain or affect the powers of the FDIC as receiver, even where that relief is directed against a third party. See Telematics, 967 F.2d at 707. Rescinding the order closing Meritor clearly would have essentially the same effect on FDIC-Receiver as would an order directly enjoining the FDIC from continuing to act as receiver.

Appellants urge that relief is warranted and not precluded by section 1821(j) where, as here, the gravamen of the complaint is that the appointment of the receiver was improper, not that the FDIC was exercising its duties as receiver improperly. We distinguish James Madison Ltd. v. Ludwig, 82 F.3d 1085 (D.C. Cir. 1996), cert. denied, 117 S.Ct. 737 (1997),12 upon which appellants rely for this

_____

12. The district court did not consider the applicability of James Madison because the Court of Appeals for the District of Columbia Circuit decided

29

proposition. In James Madison, the plaintiffs challenged the appointment of the FDIC as receiver of two national banks and requested "an injunction removing the FDIC as receiver; returning bank assets . . .; restoring the banks' charters to allow them to resume business; and returning the banks' files." Id. at 1091. The court rejected the FDIC's claim that the requested relief violated section 1821(j), reasoning that

> [u]ntil now, this circuit has not considered whether section 1821(j) precludes federal courts from granting injunctive or declaratory relief if the [regulators] improperly appointed the FDIC receiver of a national bank. In our view, section 1821 does no such thing. Section 1821(j) states only that courts cannot `restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver.' . . . It does not address federal court power to set aside an illegal appointment of a conservator or receiver. Congress knows the difference between judicial power to restrain an agency properly acting as a receiver and judicial power to remove an improperly appointed agency.

Id. at 1093. Thus, the court concluded that section 1821(j) bars a court from "interfering with the FDIC only when the agency acts within the scope of its authorized powers, not when the agency was improperly appointed in thefirst place." Id.

We conclude that James Madison is inapplicable here. The James Madison court held that the anti-injunction provision of section 1821(j) did not bar an APA challenge to the appointment of a receiver for a national bank. The court first noted that there is no statutory provision which specifically provides for the review of the appointment of a receiver for a national bank while there is such a specific provision for others. See James Madison, 82 F.3d at 1092. Compare 12 U.S.C. S 191 (appointment of receiver to a national bank) with 12 U.S.C. S 203(b) (judicial review of

_____

that case after the district court dismissed appellants' claims, except for
those against the Secretary in his individual capacity and the Doe defendants.

the appointment of a conservator of a national bank); 12 U.S.C. S 1464(d)(2)(E) (judicial review of an appointment by the Director of Office of Thrift Supervision of conservator or receiver); 12 U.S.C. S 1821(c)(7) (judicial review where the FDIC appoints itself as receiver or conservator of a state chartered institution); 12 U.S.C. S 1787(a)(1)(B) (review of appointment of National Credit Union Board as liquidating agent for insured credit union). The court held that section 1821(j) did not clearly bar such review and review of the appointment under the APA was therefore proper. See James Madison, 82 F.3d at 1094. Thus, the court in James Madison predicated its holding allowing review under the APA on the lack of an adequate remedy.

We decline to apply the rationale of James Madison here for two reasons. First, APA review of the appointment of the FDIC as receiver is not proper here because the appointment was not made by a federal agency, but rather by the Secretary, a state official. Second, James Madison concerned receiverships of national banks, whereas Meritor was a state-chartered bank, and there is or was another available procedure for review of the appointment in this case. See Pa. Stat. Ann., tit. 71, S 733-605 (West 1990).

Federal law explicitly provides for judicial review of the appointment of a receiver or conservator in certain specific instances where a receiver or conservator is appointed by a federal actor. See, e.g., 12 U.S.C. S 203(b) (providing for judicial review of the appointment of a conservator of a national bank within 20 days of the appointment); 12 U.S.C. S 1464(d)(2)(B) (providing for judicial review of an appointment by the Director of Office of Thrift Supervision within 30 days of the appointment); 12 U.S.C. S 1821(c)(7) (providing for judicial review within 30 days of the appointment where the FDIC appoints itself as receiver or conservator of a state chartered institution); 12 U.S.C. S 1787(a)(1)(B) (providing for judicial review within ten days of the appointment of National Credit Union Board as liquidating agent for insured credit union). Courts have held that where a plaintiff has not pursued these remedies to challenge the appointment of a receiver or conservator, a subsequent action outside the applicable limitation period is barred for failure to exhaust administrative remedies. See

31

Lafayette Fed. Credit Union v. National Credit Union Admin., 960 F. Supp. 999, 1005 (E.D. Va. 1997), aff'd, ___ F.3d ___ (4th Cir. 1998) (table).

The same principle applies here where there is an adequate state procedure available to challenge the appointment of a receiver by the Secretary.13 In closing Meritor, the Secretary acted pursuant to Pa. Stat. Ann., tit. 71, S 733-504B (West 1990), so that his action was subject to review under Pa. Stat. Ann., tit. 71, S 733-605 (West 1990), which provides that "[a]ny institution whose business or property the secretary has taken possession as receiver, may, at any time within ten days after the secretary has become receiver, apply to the court for an order requiring the secretary to show cause why he should not be enjoined from continuing as receiver." This state procedure is consistent with the federal policy of requiring a swift challenge to the appointment of a receiver. See, e.g., 12 U.S.C. S 203(b) (providing 20 days to seek judicial review); 12 U.S.C. S 1464(d)(2)(B) (providing 30 days to seek judicial review); 12 U.S.C. S 1821(c)(7) (providing 30 days to seek judicial review); 12 U.S.C. S 1787(a)(1)(B) (providing ten days to seek judicial review).

The district court refused to require the appellants to have availed themselves of the state procedure because it concluded that such a requirement effectively would permit a state statute to foreclose appellants' constitutional claims. In so holding, the district court apparently conceived of such a requirement as imposing a 10-day statute of limitations on any claim relating to the seizure of the bank.14

_____

13. Appellants suggested at oral argument that the statute does not apply here because it only provides for review where the Secretary is appointed as receiver. Tr. of oral arg. at 10-11. We recognize that there is scarce case law interpreting Pa. Stat. Ann., tit. 71, S 733-605, but we see no reason why the Pennsylvania statute would not apply where the Secretary has designated another to act as receiver.

14. Citing Pa. Stat. Ann., tit. 71, S 733-605, the district court stated that
"[t]he defendants have asserted a number of arguments in support of their individual motions, foremost among them the claim that the plaintiffs are barred from pursuing their constitutional claims here because of the ten day limitation on applying for court orders placed by Pennsylvania law." The district court found "that the plaintiffs are not prejudiced in their ability to bring their constitutional claims here by the
law in Pennsylvania" but left open the possibility that "the defenses of waiver, estoppel, or laches may be raised at a later date."

Once again, we emphasize the limits of our holding. We hold that section 1821(j) precludes the relief sought here, namely a rescission of the Secretary's appointment of a receiver, because it would wholly prevent the FDIC from continuing as receiver, where there is an adequate procedure available to challenge the appointment of a receiver. As we state elsewhere in this opinion, this holding is based upon section 1821(j)'s preclusion of remedies and does not foreclose the possibility of proper constitutional claims seeking other remedies.15

We also find inapplicable the case law cited by appellants in which courts have declined to apply certain state procedural requirements to plaintiffs asserting federal civil rights actions in federal court. See Felder v. Casey, 487

_____

15. Appellants' also argue that an action pursuant to Pa. Stat. Ann., tit. 71, S 733–605 could not be brought in federal court because the statute provides for exclusive jurisdiction in state court. This argument does not alter our conclusion.

First, appellants are incorrect in their blanket assertion that the statute vests exclusive jurisdiction in state court. Although the statute provides that a party must make application to "the court," which is defined as "[t]he court of common pleas in the county in which the corporation or person has its principal or only place of business in the Commonwealth; or, where an institution of which this Secretary is receiver is concerned, the particular court in which the certificate of possession . . . is filed," see Pa. Stat. Ann., tit. 71, S 733–2 (West 1990),
a state statute cannot be applied so as to limit a federal court's supplemental jurisdiction. See, e.g., Scott v. School Dist. No. 6, 815 F. Supp. 424, 429 (D. Wyo. 1993) (holding that state statute which purported to establish exclusive jurisdiction in state court is unconstitutional to extent it preclude federal courts from exercising supplemental jurisdiction over the state claims). Thus, for example, if a plaintiff instituted a proper damages suit in federal court within ten days
of the appointment of a receiver by the Secretary, the state statute could not be interpreted to preclude the federal court from exercising supplemental jurisdiction over an action under Pa. Stat. Ann., tit. 71, S 733–605.

Second, we acknowledge that our example is not realistic in many cases given the brevity of the time period in the state statute. We see no reason, however, why our conclusion should be altered by the fact that an action to challenge the appointment of the receiver pursuant to the state procedure ordinarily would not be in federal court.

33

U.S. 131, 108 S.Ct. 2302 (1988) (notice of claim statute); Burnett v. Grattan, 468 U.S. 42, 50-55, 104 S.Ct. 2924, 2929-32 (1984) (state statute of limitations); Patsy v. Board of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568 (1982) (holding that a civil rights plaintiff need not exhaust state administrative remedies). These cases are inapposite because the Court based the holdings on the notion that state laws or requirements which are inconsistent with federal law or its objectives are subordinated to the federal law by virtue of the Supremacy Clause. As the Felder Court noted, applying a state statute of limitations which provides only a truncated period in which to file an action in civil rights cases "inadequately accommodate[s] the complexities of federal civil rights litigation." Felder, 487 U.S. at 140, 108 S.Ct. at 2307.

Here, requiring appellants to have availed themselves of the Pennsylvania procedure to challenge the Secretary's taking of possession of the bank would not undermine federal policy. To the contrary, as we noted above, the state requirement is consistent with the federal policy of requiring swift objection to the appointment of a receiver.

C. ENFORCEMENT OF FDIC's STATUTORY OBLIGATIONS

The district court also dismissed Counts V and VI, in which appellants sought to enforce certain statutory duties of the FDIC. We affirm the dismissal of these counts because there is no implied private right of action to enforce the FDIC's duty to maximize gain and minimize loss in its disposition of assets and the shareholders have no enforceable right to an accurate accounting.

1. FDIC's Duty to Maximize Gain and Minimize Loss in its Disposition of Assets

In its September 6, 1995 order,16 the district court
_____

16. The district court initially dismissed this claim, embodied in Count V of appellants' First Amended Complaint, for lack of jurisdiction by order dated February 28, 1995. The district court held that the appellants had failed to exhaust their administrative remedies. Shortly thereafter, the court reinstated the claim after appellants completed their pursuit of those procedures. Therefore, the September 6, 1995 disposition of this claim is the subject of this appeal.

34

dismissed appellants' claim for money damages for the
FDIC-Receiver's alleged failure to comply with its statutory
duty to maximize the gain and minimize the loss in the
disposition of Meritor's assets. See 12 U.S.C.
S 1821(d)(13)(E).17 The district court held that this provision
neither expressly nor impliedly grants a private right of
action to individual shareholders.18 See exhibit B to
appellant's brief.

The standard announced in Cort v. Ash, 422 U.S. 66, 95
S.Ct. 2080 (1975), guides our inquiry into whether section
1821(d)(13)(E) impliedly grants shareholders of a failed
financial institution a private right of action to enforce the
FDIC-Receiver's statutory obligations. In Cort, the Court
announced that courts should consider the following four
factors to determine whether a statute impliedly grants a
private right of action: (1) whether the plaintiff is a member

_____

17. Section 1821(d)(13)(E) provides:

    In exercising any right, power, privilege, or authority as
conservator
    or receiver in connection with any sale or disposition of assets of
    any insured depository institution for which the Corporation has
    been appointed conservator or receiver, including any sale or
    disposition of assets acquired by the Corporation under section
    1823(d)(1) of this title, the Corporation shall conduct its
operations
    in a manner which--

    (i) maximizes the net present value return from the sale or
    disposition of such assets;

    (ii) minimizes the amount of any loss realized in the resolution of
    cases;

    (iii) ensures adequate competition and fair and consistent
treatment
    of offerors;

    (iv) prohibits discrimination on the basis of race, sex, or ethnic
    groups in the solicitation and consideration of offers; and

    (v) maximizes the preservation of the availability and
affordability of
    residential real property for low- and moderate-income individuals.

18. Appropriately, appellants do not appeal the district court's decision
to the extent that the court held that the statute does not expressly
grant appellants a private right of action. See Touche Ross & Co. v.
Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485 (1979) (holding that

a right of action must be clear from the text of the statute).

of the class for whose special benefit the statute was created; (2) whether there is either an explicit or implicit legislative intent to create or deny a private remedy; (3) whether an implied remedy is consistent with underlying policies of the statute; and (4) whether the cause of action is one that traditionally is relegated to state law and the area is a state concern so that it would be inappropriate to imply a federal cause of action. See id. at 78, 95 S.Ct. at 2088.

In deciding whether to recognize an implied private right of action, we ascertain the intent of Congress;"[u]nless such `congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.' " Karahalios v. National Fed'n of Fed. Employees, Local 1263, 489 U.S. 527, 532–33, 109 S.Ct. 1282, 1286 (1989) (quoting Thompson v. Thompson, 484 U.S. 174, 179, 108 S.Ct. 513, 516 (1988)). Thus, we recently have noted that we should focus our inquiry on the first two Cort factors. See Mallenbaum v. Adelphia Communications Corp., 74 F.3d 465, 469 (3d Cir. 1996).

Appellants contend that the district court erred by failing to give proper consideration of two circumstances which distinguish this case from others involving receiverships: (1) the existence of a surplus in the Meritor receivership; and (2) the appellants, as shareholders, have an express statutory right to distribution of this surplus. According to appellants, in the context of a receivership operating with a surplus, the Cort factors are met and thus we should imply the existence of a private right of action in their favor.

We disagree. Our analysis of the Cort factors, with an emphasis on the first two, see Mallenbaum, 74 F.3d at 469, leads us to the conclusion that there is no evidence of a congressional intent to provide for a private remedy. Because such intent is our ultimate guidepost, wefind that the shareholders of a failed financial institution do not have a private right of enforcement of the FDIC's duty to maximize gain and minimize loss in its disposition of the institution's assets.

First, appellants, as shareholders, are not members of a class for whose special benefit Congress created section 1821(d)(13)(E). The duty to maximize gain in the disposition of assets has implications broader than to benefit shareholders. The FDIC's duty to maximize gain and minimize loss primarily is intended to benefit the insurance fund by minimizing the claims against it, thereby reducing the cost to the taxpayers. Thus, the benefits gained by the shareholders and other claimants are incidental to the primary intended beneficiaries, the insurance fund and the taxpayers. See FDIC v. Niblo, 821 F. Supp. 441, 455 n.59 & 456 (N.D. Tex. 1993); FDIC v. Updike Bros., Inc., 814 F. Supp. 1035, 1041–42 (D. Wyo. 1993).

In a similar context, we have noted that the FDIC does not have a duty to shareholders. See First State Bank of Hudson County v. United States, 599 F.2d 558, 563 (3d Cir. 1979). In Hudson County, we held that the FDIC's duty to examine banks, see 12 U.S.C. S 1820, is intended to prevent losses which ultimately would result in claims against the insurance fund. See id. at 562–63. We also noted that while the examination incidentally might benefit the bank, its depositors, and its creditors, the primary purpose of the examination is to safeguard the insurance fund. See id. at 563. Further, our conclusion is supported by evidence in the legislative history that Congress was concerned with reducing the costs to taxpayers. See H.R. Rep. No. 101–54(I), 101st Cong., 1st Sess., 1, 514–15, reprinted in 1989 U.S.C.C.A.N. 86, 308–09.

In addition, the duty to maximize gain and minimize loss does not operate for the special benefit of shareholders where the receivership is operating with a surplus. Section 1821(d)(11)(B) establishes a shareholder right to distribution of funds in a case where there is a surplus after the payment of all claimants and administrative expenses.19 Given this right to distribution, appellants

_____

19. The text of the section provides:

    In any case in which funds remain after the depositors, creditors,
    other claimants, and administrative expenses are paid, the receiver
    shall distribute such funds to the depository institution's

argue that the FDIC fulfills its statutory duty to maximize gain in order to preserve the surplus, thus for the sole benefit of the shareholders. We disagree.

We recognize that the express right to distribution of surplus granted under section 1821(d)(11)(B) creates a direct interest in shareholders. See California Hous. Sec., Inc. v. United States, 959 F.2d 955, 957 n.2 (Fed. Cir. 1992) (rejecting the argument that the shareholders did not have standing to claim an unconstitutional taking); Branch v. FDIC, 825 F. Supp. 384, 402–06 (D. Mass. 1993) (holding that shareholders of a failed financial institution have standing to assert derivative claims because they retain the right to distribution of surplus). This right, however, does not transform the FDIC's duty to maximize gain and minimize loss into one inuring solely to the benefit of the shareholders. The FDIC performs its section 1821(d)(13)(E) duty to maximize gain intending to reduce the claims against the insurance fund, not to ensure that shareholders receive distribution.

Because the section clearly inures to the benefit of other classes, the first Cort factor militates strongly against granting a private remedy. Turning to the second Cort factor, the parties agree that there is no statement in the legislative history which suggests that Congress intended either to create or deny a private right of action to enforce the FDIC's duty to maximize gain and minimize loss. While congressional silence does not preclude a court from implying a private right of action where the other factors are satisfied, see Zeffiro v. First Pa. Bank & Trust Co., 623 F.2d 290, 297 (3d Cir. 1980), here we find that the other factors do not support finding a private right of action.

_____

shareholders or members together with the accounting report required under paragraph (15)(B).

12 U.S.C. S 1821(d)(11)(B).

Although Congress recently amended this section, the amended provision only applies to institutions for which receivers were appointed after the enactment of the amendment. See Pub. L. No. 103–66, S 3001(a), 107 Stat. 312, 337 (1993). Thus, our discussion is governed by this version of this section prior to the 1993 amendment.

While we acknowledge that an action against a federal entity to enforce rights expressly granted under federal law traditionally is not relegated to state law, our inquiry ends upon our conclusion that the first two Cort factors are not met. See California v. Sierra Club, 451 U.S. 287, 298, 101 S.Ct. 1775, 1781 (1981) (noting that the second two factors "are only of relevance if the first two factors give indication of congressional intent to create the remedy").

2. FDIC's Duty to Provide Annual Accounting

The district court dismissed appellants' claim for a full and fair accounting from the FDIC–Receiver, to which appellants alleged they were entitled under 12 U.S.C. S 1821(d)(15)(A)–(C). The court found that the FDIC–Receiver had complied with the literal requirements of the provision by providing a copy of the annual accounting report to appellants upon their request, and refused to engraft an enforceable duty to provide a correct accounting to shareholders.

We again part with the district court's approach, but not its result. While the district court focused on whether an accuracy requirement is implicit in the statute, wefind the more appropriate inquiry to be whether the statute grants shareholders an implied private right of enforcement. We hold that it does not.

The relevant portion of 12 U.S.C. S 1821(d)(15) provides:

> (A) The Corporation as conservator or receiver shall, consistent with the accounting and reporting practices and procedures established by the Corporation, maintain a full accounting of each conservatorship and receivership or other disposition of institutions in default.

> (B) With respect to each conservatorship or receivership to which the Corporation was appointed, the Corporation shall make an annual accounting or report, as appropriate, available to the Secretary of the Treasury, the Comptroller General of the United States, and the authority which appointed the Corporation as conservator or receiver.

(C) Any report prepared pursuant to subparagraph (B) shall be made available by the Corporation upon request to any shareholder of the depository institution for which the Corporation was appointed conservator or receiver or any other member of the public.

Although appellants urge us to imply a requirement of accuracy, they cite no authority which directly supports this view. Rather, they cite analogous authority, which we find unpersuasive in this context. See First Nat'l Bank of Gordon v. Department of Treasury, 911 F.2d 57, 62–63 (8th Cir. 1990).20 Despite this lack of authority, we recognize that, in a practical sense, at some point the right to an accounting may be rendered meaningless if the accounting is not accurate. Nevertheless, even if we were to imply an accuracy requirement, we must affirm the district court's dismissal of this claim because our analysis of the Cort factors establishes that the shareholders do not have a private right of action to enforce the FDIC duty.

The shareholders are not members of a special class for whose benefit the statute was created. Rather, the plain language of the statute puts shareholders on par with members of the general public. The statute gives shareholders and members of the public identical rights –– the FDIC must make the annual report available to either upon request –– and the statute establishes these rights in the same subsection. We see no reason, therefore, to distinguish between shareholders and members of the general public for purposes of this statute.

Further, the legislative history is silent as to whether Congress intended to create a private remedy. Because the first two Cort factors are not satisfied, our inquiry ends here. See Sierra Club, 451 U.S. at 298, 101 S.Ct. at 1781.

_____

20. In First National, the court addressed the interpretation of a statute which requires financial associations to make reports of condition in accordance with 12 U.S.C. S 1811 et seq. See 12 U.S.C. S 161(a). The court found that a bank violated section 161(a) where the report of its condition was not accurate. Section 161(a) includes a requirement that the report be accurate to the best knowledge and belief of the officers who sign it, but does not expressly make the bank responsible for an inaccurate report. In contrast, section 1821(d) does not include language concerning accuracy. Thus, First National is distinguishable.

Because there is no indication of a congressional intent to grant shareholders a private right to enforce the FDIC's duty to provide an accounting, we will affirm the dismissal of this claim. We emphasize, however, that we render no opinion on whether the FDIC has a duty to provide an accurate accounting to those officials enumerated in subsection (B).

IV. CONCLUSION

For the foregoing reasons, we will affirm the district court's dismissal of appellants' claims.

ROTH, Circuit Judge, concurring and dissenting:

I concur for the most part with the majority's thorough and thoughtful opinion. I cannot, however, agree with their conclusion in Part III.C.2. that the appellants do not have a right to demand an annual accounting beyond what the FDIC might choose to provide to them. The statute states that the FDIC shall "consistent with the accounting and reporting practices and procedures established by the [FDIC], maintain a full accounting of each. . . receivership" and that it shall provide to any shareholder or to any other member of the public a copy of its annual report with respect to each such receivership. 12 U.S.C. S 1821(d)(15)(A)-(C) (emphasis added).

I conclude from the above statutory language that the shareholders, as well as the general public, have the right to an annual report which has been prepared in a manner which is consistent with the accounting and reporting practices established by the FDIC. It has not been documented on the record here that the annual reports supplied to appellants by the FDIC do conform to such practices. I would therefore remand this issue to the district court for a determination whether the reports in question meet the required statutory standard. Cf. First Nat'l Bank of Gordon v. Department of Treasury, 911 F.2d 57, 62-63 (8th Cir. 1990) (holding that bank violated 12 U.S.C.S 161(a), requiring an accurate report, when it submitted an inaccurate one to the Comptroller of the Currency).

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

42